**Christopher E. Hawk** (OSB 061635)
chawk@gordonrees.com
GORDON & REES LLP
121 SW Morrison St., Suite 1575
Portland, Oregon 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

**Brent H. Blakely** (*Pro Hac Vice*)
bblakely@blakelylawgroup.com
Blakely Law Group
915 North Citrus Ave.
Hollywood, CA  90038
Telephone:  323.464.7400
Facsimile:  323.464.7410
Attorneys for Plaintiffs Coach, Inc.
and Coach Services, Inc.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **COACH, INC.,** a Maryland Corporation; **COACH SERVICES, INC.,** a Maryland Corporation, | **CASE NO: 3:11-cv-00486-HZ** |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE DEFENDANT'S LIABILITY FOR TRADEMARK INFRINGEMENT** |
| v. | |
| **SISKIYOU BUCKLE CO., INC.,** an Oregon Corporation dba **SISKIYOU GIFTS; DOES 1-10,** inclusive, | |
| Defendants. | |

TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 1

      A.    Coach's Trademarks ................................................................................. 1

      B.    Defendant's Infringement of the Coach Marks ................................... 2

III.  LEGAL ARGUMENT ......................................................................................... 3

      A.    Standard of Review for a Summary Judgment Motion ...................... 3

      B.    Coach is Entitled to Summary Judgment as to the Issue of Liability for
            Trademark Infringement against Defendant ...................................... 4

            1.    Validity of the Coach Marks ........................................................ 4

            2.    Likelihood of Confusion is Presumed Where Goods are
                  Counterfeit .................................................................................... 4

            3.    Defendant's Products Bear Marks Identical and/or Substantially
                  Indistinguishable from the Coach Marks .................................. 6

                  (a)    Strength of Coach's CC Mark ........................................... 7

                  (b)    Relatedness of Goods .......................................................... 8

                  (c)    Similarity of Marks ............................................................ 8

                  (d)    Evidence of Actual Confusion ........................................... 8

                  (e)    Marketing Channels Used .................................................. 9

                  (f)    Degree of Purchaser Care .................................................. 9

                  (g)    Defendant's Intent in Selecting the Mark ....................... 9

                  (h)    Likelihood of Expansion of Product Lines ...................... 9

            4.    *Strict Liability for Violations of the Lanham Act* ................. 9

IV.   COACH IS ENTITLED TO A PERMANENT INJUNCTION PURSUANT TO
      15 U.S.C. § 1116 ............................................................................................... 10

V.    CONCLUSION ................................................................................................. 10

## TABLE OF AUTHORITIES

### FEDERAL CASESCASES

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).........4, 7, 8, 9

Celotex Corp. v. Catreft, 477 U.S. 317, 327 (1986) ................................. 3

Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.
    1988) ........................................................................................7

Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007 (9th Cir. 2001).................7

E. & J. Gallo Winery v. Pasatiempos Gallo, 905 F. Supp. 1403, 1412
    (E.D. Cal. 1994) ......................................................................7, 9

Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494...................................... 5

Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 156
    (9th Cir. 1963)...........................................................................9

Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir.
    1983) .....................................................................................10

Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587
    (1986) ......................................................................................3

Phillip Morris U.S.A. Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D.
    Cal. 2004)...............................................................................4, 9

Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., 592 F.
    Supp. 648, 650 (D. Mass. 1984) .........................................................5

Polo Fashions, Inc. v. Clothes Encounters, 1985 U.S. Dist. LEXIS 17838,
    8, 227 U.S.P.Q. 327 (N.D. Ill. 1985) ...................................................5

Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005) ......................... 10

Toho Co. v. William Morrow Co., 33 F. Supp. 2d 1206, 1210 (C.D. Cal.
    1998) .......................................................................................4

Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, 593 F.Supp.2d 1153 (S.D.Cal.
    2008)........................................................................................4

8

Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036
    (9th Cir. 1999).......................................................................4, 6, 8

Gucci America, Inc. v. Action Activewear Inc., 759 F. Supp. 1060
    (S.D.N.Y. 1991) .........................................................................7

Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284
    (S.D.N.Y. 2003) .........................................................................5

Kyjen Co., Inc. v. Vo-Toys, Inc., 223 F.Supp.2d 1065 (C.D.Cal. 2002) ................ 6

Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002 (9th
    Cir.2004) ................................................................................................ 6

Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605-606 (9th
    Cir.1987) ................................................................................................ 8

Official Airline Guides v. Goss, 6 F.3d 1385 (9th Cir., 1993) .................................. 8

Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172 (C.D. Cal. 2002) .............. 10

Saks & Co. v. Hill, d.b.a., Sacks Thrift Avenue, 843 F. Supp. 620 (S.D.
    Cal. 1993)................................................................................................ 8

Suarez Corp. Industries v. Earthwise Technologies, Inc., 2008 WL
    4934055 (W.D. Wash., 2008) ............................................................... 6

Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, 593 F.Supp.2d 1153
    (S.D.Cal. 2008) ...................................................................................... 4

## FEDERAL STATUTES9

15 U.S.C. §1065 ................................................................................................ 9

15 U.S.C. §1114 ................................................................................................ 9

15 U.S.C. §1116(a)............................................................................................ 10

15 U.S.C.A. §1127 ............................................................................................ 5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

As by now it is well known that an illicit multimillion dollar industry has developed in the United States involving the unlawful importation, distribution, offer for sale and sale of merchandise bearing counterfeits and/or infringing imitations of the trademarks and names of legitimate manufacturers and distributors. This counterfeiting industry often targets the Coach® brand and its iconic trademarks and copyrighted works.

Over the years, Coach has sued numerous entities for trademark infringement of its marks, most commonly its iconic CC Mark.  This case originated from an action against Lowe's after counterfeit Coach key chains were obtained from its retail stores.  Coach eventually learned that the distributor of these key chains was Defendant Siskiyou Buckle Co., Inc. Since there are no genuine issues of material fact regarding the validity of Coach's ownership to the CC Mark and Defendant does not deny having sold the infringing products at issue, Coach is entitled to summary judgment as to its trademark infringement claim.

### II.    STATEMENT OF FACTS

#### A.    Coach's Trademarks

Coach was founded more than sixty years ago as a family-run workshop in a Manhattan loft. (Declaration of Dayanara Perez ("Perez Decl.,") ¶ 3) Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including key fobs, key chains, handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories. (Perez Decl., ¶ 3)  Coach Services, Inc., Coach, Inc.'s wholly owned subsidiary (hereinafter collectively "Coach"), is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components ("Coach Marks"). (Perez Decl., ¶ 4)

Amongst the many Coach Marks, one of the most well known and recognized mark is Coach's "CC CC CC CC" Mark (hereinafter "CC Mark").  (Perez Decl., ¶ 5)



The CC Mark was first registered at the U.S. Patent and Trademark Office in 2002. (Perez Decl., ¶ 5) The CC Mark is registered for a variety of goods, including key fobs and key chains. (Perez Decl., ¶ 5)

Coach has used the CC Mark in association with the sale of goods in its "Signature" line of goods since as early as 2001. Coach's "Signature" line of goods features repetitions of the CC Mark in various sizes, colors, and patterns. (Perez Decl., ¶6)

Coach's CC Mark is one of Coach's most iconic trademarks; Coach has derived a substantial income from the sale of products bearing the CC Mark. (Perez Decl., ¶ 7) Coach continues to sell products bearing the CC Mark to this date, and products bearing the CC Mark continue to earn millions of dollars in sales per year. (Perez Decl., ¶ 8) Coach and its predecessors have expended millions of dollars in advertising, promoting, and marketing goods featuring the CC Mark. (Perez Decl., ¶ 9) Due to Coach's long use, extensive sales, significant advertising and promotional activities, the CC Mark has achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States. (Perez Decl., ¶ 10) Coach products are distributed throughout the United States and worldwide in both Coach retail stores and department stores such as Bloomingdales, Nordstrom, Macy's, and Lord and Taylor. (Perez Decl., ¶ 11) The Coach brand of products has been praised and recognized in numerous articles appearing in both trade publications and publications directed to the general public. Publications such as Elle, Bazaar, InStyle, Vogue, Cosmopolitan, Marie Claire, and Vanity Fair, have all featured Coach products. (Perez Decl., ¶12) In addition to selling its products on a retail basis, Coach also sells to limited retailers on a wholesale basis. (Perez Decl., ¶13)

**B.    Defendant's Infringement of the Coach Marks**

Defendant Siskiyou Buckle Co., Inc. ("Siskiyou") is an Oregon corporation located at 3551 Avion Drive, Medford, Oregon 97504. (Declaration of Brent H. Blakely ("Blakely Decl."), ¶ 5, Ex. 1) In or around August, 2010, Coach learned that Siskiyou had supplied The Hillman Group, Inc.

("Hillman"), a defendant in a prior action, with key fobs bearing counterfeit reproductions of Coach's CC Mark ("Infringing Products").  (Blakely Decl., ¶¶ 2-4, Ex. 1) Moreover, Siskiyou has repeatedly admitted to having imported and distributed the Infringing Products.  (Blakely Decl., ¶ 6, Ex.2 (Deposition of Joseph K Stringer, 6:1-6:6; 9:4-9:20; 22:16-24:2; 31:6-32:14))

Coach representatives have examined the Infringing Products at issue, and determined such products to be counterfeit.  (Perez Decl., ¶ 14, Ex. 3)  Defendant is not authorized by Coach to manufacture, sell or offer for sale products bearing any of Coach's trademarks, trade dresses, and/or copyrighted designs.  Moreover, Defendant is not a licensee of Coach or in any other manner licensed to import, sell, distribute, or manufacture any merchandise bearing Coach's trademarks and/or copyrighted works.  (Perez Decl., ¶ 15)

## III.   LEGAL ARGUMENT

### A.     Standard of Review for a Summary Judgment Motion

The summary judgment procedure aims to discover whether there is evidence requiring the fact weighing process of a trial.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  [Fed.R.Civ.P. 56(c)]  The United States Supreme Court has observed that summary judgment and summary adjudication have proven a beneficial approach to reduce the burden on our federal court system.  [See Celotex Corp. v. Catreft, 477 U.S. 317, 327 (1986)]

The burden on the moving party is satisfied by a showing that there is an absence of evidence to support the nonmoving party's case.  [Celotex at 322]  Once the moving party meets this initial obligation, the nonmoving party may not rest on mere allegations or denials in the pleadings but must "come forth with 'specific facts' showing that there is a genuine issue for trial."  [Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)]  A summary judgment motion may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  [Fed.R.Civ.P. 56(c)]

3

Pursuant to Rule 56, "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."  [Fed.R.Civ.P. 56(d)(2); see also Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, 593 F.Supp.2d 1153, 1164 (S.D.Cal. 2008)]

**B.**    **Coach is Entitled to Summary Judgment as to the Issue of Liability for Trademark Infringement against Defendant**

In order to succeed on a trademark infringement claim, a plaintiff must establish: 1) that it has a valid, protectable trademark, and 2) Defendant subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake.  [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1046 (9th Cir. 1999); Toho Co. v. William Morrow Co., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998)]

**1.    Validity of the Coach Marks**

Coach has federal registrations for all the marks which it seeks to protect in this matter. (Perez Decl., ¶¶ 4 - 6)  The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark, ownership of the mark and of the registrant's exclusive right to use the registered mark."  [15 U.S.C. §§ 1057(b), 1115(a); Brookfield, 174 F.3d at 1046-47]  Coach Services, Inc., the wholly-owned subsidiary of Coach, Inc., is the owner of all the registrations for the CC Mark.  (Perez Decl., ¶ 4)

**2.    Likelihood of Confusion is Presumed Where Goods are Counterfeit**

The Ninth Circuit has traditionally applied an eight factor balancing test in order to determine whether a defendant's infringement caused a likelihood of confusion.  [See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)]  However, a summary judgment motion in a counterfeiting case is readily granted because there is no question that there has been a likelihood of confusion.  A counterfeiting case is of such a nature that it "indicates a strong likelihood of confusion."  [Phillip Morris U.S.A. Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004)]  "In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination [of the factors] because counterfeit marks are inherently confusing."  [Id.]  "Multi-factored balancing is unnecessary in cases . . . where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods."  [General

4

Motors Corp. at 761  (In counterfeiting cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another.")][1]

While the Lanham Act's likelihood of confusion standard is predominantly factual in nature, the likelihood of confusion is presumed in a case where the defendant has manufactured, sold, or distributed counterfeit goods.  [See Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); Philip Morris U.S.A. Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); General Motors Corp. v. Autovation Technologies, Inc., 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004) ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design")[2]]

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  [15 U.S.C.A. §1127]  As J. Thomas McCarthy instructs, "A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the genuine mark.  Often, counterfeit merchandise is made so as to imitate a

---

[1] "The counterfeit merchandise is a duplicate for the genuine article.  Where a counterfeit item is virtually identical to the genuine item, the 'very purpose of the individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article.'"  [Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494 (S.D. Fla. 1995)]  Thus, in a counterfeiting case, the registered trademark holder need not prove intent to deceive in order to recover.  [Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., 592 F. Supp. 648, 650 (D. Mass. 1984)]  The rationale is that a defendant's use of a name or mark "cannot be justified by a claim of innocence, good faith, or lack of knowledge."  [Polo Fashions, Inc. v. Clothes Encounters, 1985 U.S. Dist. LEXIS 17838, 8, 227 U.S.P.Q. 327 (N.D. Ill. 1985)]  "Neither a finding of fraudulent intent, nor of bad faith . . . is required to establish liability for trademark infringement. . . . It is the objective fact of the infringement that is all important."  [Id. at 7-8]

[2] In General Motors Corporation v. Autovation Technologies, Inc., the defendant, who was neither affiliated with nor authorized by GM to use the GM trademarks, sold products and parts that were counterfeits of the GM trademarks, such as foot pedals and replacement pedals.  [General Motors, 317 F. Supp. 2d at 760]  The court in stated that where a defendant has "misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods" the likelihood of confusion is presumed.  [Id.]

well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." [J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003) (emphasis added)]

Defendant's Infringing Products bear counterfeit reproductions of Coach's CC Mark– the marks on these products are substantially indistinguishable, if not identical, to Coach's mark.

| Defendant's Product | Authentic Coach Product |
|---|---|
|  | |

Thus, summary judgment on Coach's 15 U.S.C. § 1114 claim should be granted on the grounds that the products sold by Comely are counterfeit.

### 3. Defendant's Products Bear Marks Identical and/or Substantially Indistinguishable from the Coach Marks

Even if the goods were not considered "counterfeit," an analysis of the <u>Sleekcraft</u> factors would still warrant summary judgment in favor of Coach. Where there is a "virtual identity of marks" used with the same type of product, "likelihood of confusion would follow as a matter of course." [<u>Brookfield</u>, 174 F.3d at 1056; *see also* <u>Suarez Corp. Industries v. Earthwise Technologies, Inc.</u>, 2008 WL 4934055 (W.D. Wash., 2008) (maker of a space heater was entitled to summary judgment on a trademark infringement claim it brought against the maker of another heater where marks at issue were identical, and both manufacturers simultaneously sold related products marketed through the Internet; <u>Nissan Motor Co. v. Nissan Computer Corp.</u>, 378 F.3d 1002, 1019 (9th Cir.2004) (affirming summary judgment where the marks were "legally identical," the goods at issue were related, and the marketing channels overlapped); <u>Kyjen Co., Inc. v. Vo-Toys, Inc.</u>, 223 F.Supp.2d 1065 (C.D.Cal. 2002) (summary judgment on trademark infringement claim granted in favor of plaintiff where plaintiff's "bungee" mark was infringed by competitor's use of same term for similar product)

The eight factors to be considered under the traditional <u>Sleekcraft</u> balancing test include the: 1) strength of the mark; 2) proximity or relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines.  [<u>Sleekcraft</u>, 599 F.2d at 348-49; <u>Downing v. Abercrombie & Fitch</u>, 265 F.3d 994, 1007 (9th Cir. 2001)]

### (a)   Strength of Coach's CC Mark

A strong trademark is distinctive in that the public is aware of the mark and associates that mark with a single business or source of supply.  [<u>E. & J. Gallo Winery v. Pasatiempos Gallo</u>, 905 F. Supp. 1403, 1412 (E.D. Cal. 1994)]  Marks may be strengthened by extensive advertising, length of time in business, public recognition, and uniqueness.  [<u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1179 (9th Cir. 1988)]  A strong mark is "inherently distinctive" and is "afforded the widest ambit of protection from infringing uses."  [<u>Sleekcraft</u> at 349]  Registered trademarks are "presumed to represent the source [of the goods or services] in the minds of the public."  [<u>Gucci America, Inc. v. Action Activewear Inc</u>., 759 F. Supp. 1060, 1064 (S.D.N.Y. 1991)]  Registered marks inherently possess a "secondary meaning," whereby the mark comes to identify "not only the goods but the source of those goods."  [<u>Id</u>.]

Coach has derived substantial income from the sale of products bearing the CC Mark.  (Perez Decl., ¶ 7)  Coach continues to sell products bearing the CC Mark to this date, and products bearing the CC Mark continue to earn millions of dollars in sales per year.  (Perez Decl., ¶ 8)

Coach products are distributed throughout the United States and worldwide in both Coach retail stores and department stores such as Bloomingdales, Nordstrom, Macy's, and Lord and Taylor. (Perez Decl., ¶ 11)  The Coach brand of products has been praised and is recognized in numerous articles appearing in both trade publications and publications directed to the general public. Publications such as Elle, Bazaar, InStyle, Vogue, Cosmopolitan, Marie Claire, and Vanity Fair have all featured Coach products.  (Perez Decl., ¶ 12)  Due to Coach's long use, extensive sales, and significant advertising and promotional activities, the CC Mark has achieved widespread acceptance

and recognition among the consuming public and trade throughout the United States.  (Perez Decl., ¶ 10)

**(b)    Relatedness of Goods**

Examples of "proximate" goods are those which complement one another, are sold to the same class of consumers, or are similar in use and function.  [Saks & Co. v. Hill, d.b.a., Sacks Thrift Avenue, 843 F. Supp. 620, 623 (S.D. Cal. 1993)]  Both Coach and Defendant are in the business of key fobs/key chains.  Thus, the goods are indeed "related" for purposes of determining likelihood of confusion.

**(c)    Similarity of Marks**

"Similarity of the marks is tested on three levels: sight, sound, and meaning." [Sleekcraft, 599 F.2d at 351 (citation omitted)]  "Each must be considered as they are encountered in the marketplace." [Id.; Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605-606 (9th Cir.1987); Official Airline Guides v. Goss, 6 F.3d 1385 (9th Cir., 1993) (no confusion between "OAG Travel Planner" and "The Travel Planner USA.")]

As discussed above, the "C"s on the Infringing Mark are arranged in a manner nearly identical to the orientation of the "C"s in Coach's CC Mark.  Defendant's use of the Infringing Mark appears in such a way as to imitate the appearance of the CC Mark on authentic Coach products.

**(d)    Evidence of Actual Confusion**

"The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1050 (9th Cir. 1999)]  Moreover, Plaintiffs need not prove actual confusion in order to prevail on a motion for summary judgment in a counterfeiting case. [Polo Fashions, Inc., 592 F. Supp. at 651]  The counterfeiting of Coach products undermines the reputation of the Coach trademarks and reduces the demand for genuine Coach products.  Given the striking similarity between Defendant's goods and authentic Coach goods, actual confusion among members of the public would be expected.

**(e)    Marketing Channels Used**

"Similarity of trade channels does not require sales of both parties' goods by identical vendors, but only by the same type of distribution channels."  [E. & J. Gallo Winery, 905 F. Supp. at 1413]  Both Defendant and Coach sell their products on a wholesale basis.  Thus, this factor weighs in favor of a finding of likelihood of confusion between Defendant's and Coach's products.

**(f)    Degree of Purchaser Care**

In assessing likelihood of confusion, the standard used is the typical buyer exercising ordinary care, including "the ignorant, the unthinking and the credulous."  [Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 156 (9th Cir. 1963)]  The degree of purchaser care is indeed quite low in this situation where Defendant is selling key fobs/key chains, and like items which are relatively less expensive.

**(g)    Defendant's Intent in Selecting the Mark**

Defendant was on constructive notice as to Coach's rights to the CC Mark based upon Coach's various trademark registrations to said mark.  (Perez Decl., ¶¶ 5, 6) [15 U.S.C. §1065]  Due to the striking similarity between Defendant's Infringing Products and Coach's "Signature" line of products, it is reasonable to conclude that Defendant intended to sell off its goods as if they were those of Coach's.   Furthermore, Defendant had no policies or procedures established to assure that it was not importing or distributing goods that infringed upon intellectual property rights at the time of its infringing conduct.  (Deposition of Joseph K Stringer, 19:24- 20:15)

**(h)    Likelihood of Expansion of Product Lines**

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing."  [Sleekcraft at 354] As discussed above, the products sold by Coach and Defendant are both distributed on a wholesale basis.  Thus, there is already a conversion of product lines here that would warrant a finding of likelihood of confusion. (Deposition of

**4.    *Strict Liability for Violations of the Lanham Act***

Ignorance is no defense to violations of the Lanham Act.  [15 U.S.C. §1114; Phillip Morris, 352 F.Supp. 2d at 1073]  Indeed, "sellers bear strict liability for violations of the Lanham Act".

9

[Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir. 1983)]  "Notably, as in the copyright realm, intentional infringement may lead to enhanced statutory damages, but is not required to prove defendant's liability."  [Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005)]

While Defendant's infringing conduct is indeed willful, Defendant's intent is irrelevant to this motion which is limited to the issue of Defendant's liability.  Since it is clear that the products sold by Defendant infringe upon Coach's famous CC Mark, the only question that remains is the appropriate remedy.

## IV.    COACH IS ENTITLED TO A PERMANENT INJUNCTION PURSUANT TO 15 U.S.C. § 1116

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights."  [Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); 15 U.S.C. §1116(a)]  As such, Coach requests that this Court order a permanent injunction against Defendant to enjoin it from using the Infringing Mark and/or any other marks confusingly similar to the Coach Marks in connection with the manufacture, distribution, importation, offering for sale, and/or sale of products.

## V.    CONCLUSION

Based on the foregoing, Plaintiffs Coach, Inc. and Coach Services, Inc. respectfully request that this Court grant summary judgment in favor of Plaintiffs against Defendant Siskiyou Buckle Co., Inc. on the issue of liability for trademark infringement.  Plaintiffs further request that this Court issue a permanent injunction pursuant to 15 U.S.C. § 1116.

DATED:        February 6, 2012            GORDON & REES LLP

                                          By:    /s/Christopher E. Hawk
                                                 Christopher E. Hawk (OSB#061635)
                                                 Brent H. Blakely (Pro Hac Vice)
                                                 Attorney for Plaintiffs
                                                 Coach Inc., and Coach Services, Inc.