Christopher E. Hawk (OSB 061635)
chawk@gordonrees.com
**GORDON & REES LLP**
121 SW Morrison St., Suite 1575
Portland, Oregon 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

**Brent H. Blakely (*Pro Hac Vice*)**
bblakely@blakelylawgroup.com
Blakely Law Group
915 North Citrus Avenue
Hollywood, CA 90038
Telephone: 323.464.7400
Facsimile: 323.464.7410
Attorneys for Plaintiffs Coach, Inc.
and Coach Services, Inc.

# UNITED STATES DISTRICT COURT
# DISTRICT OF OREGON
# PORTLAND DIVISION

| | |
|---|---|
| COACH, INC., a Maryland Corporation; COACH SERVICES, INC., a Maryland Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> SISKIYOU BUCKLE CO., INC., an Oregon Corporation dba SISKIYOU GIFTS; DOES 1-10, inclusive, <br><br> Defendants. | CASE NO: 3:11-cv-00486-HZ <br><br> **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE DEFENDANTS' LIABILITY FOR TRADEMARK INFRINGEMENT** |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant has failed to offer a single piece of evidence that raises any genuine issues of fact regarding its liability for trademark infringement in its Response to Plaintiffs' Motion. There are no genuine issues in this case regarding Coach's ownership and rights to the CC Mark or that Defendant sold the Infringing Products in question. The fact of the matter is that Defendant was importing and selling products bearing counterfeit reproductions of Coach's CC Mark.

Defendant mainly relies on its woeful application of the *Sleekraft* factors to the instant circumstances to arrive at its unsubstantiated position that the products at issue do not infringe upon the CC Mark. In fact, Defendant's analysis of the *Sleekraft* factors is completely devoid of any legal authority; each conclusion stated is nothing more than inadmissible conjecture. The fact remains – a simple comparison of Defendant's Infringing Products and Coach's CC Mark demonstrates that the goods at issue are counterfeit.

Moving on from *Sleekraft*, Defendant asserts the utterly ludicrous proposition that it is equitably sheltered from liability based on a settlement agreement between Coach and Hillman, despite the fact that Defendant was not a party to the settlement, and that Coach was not even aware of its existence until after it was disclosed as part of the settlement agreement.

Defendant's final argument, that res judicata applies to Coach's instant claims, is beyond absurd. In order for res judicata to apply, there must be a final judgment on the merits between the same parties with regards to the instant claim. There has never been a final judgment on the merits with regards to the present dispute.

## II. DEFENDANT HAS OFFERED NO EVIDENCE TO SHOW THAT A DISPUTE EXISTS

Defendant has failed to offer a single piece of controverting evidence with regards to Plaintiff's Motion for Partial Summary Judgment. As discussed in

Plaintiff's moving papers, summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law. [Fed.R.Civ.P. 56(c)] The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact. [T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc., 809 F.2d 626, 632 (9th Cir.1987)] If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. [Fed.R.Civ.P. 56(e)] In addition, the dispute must be genuine. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." [Matsushita Elec. Indus. Co. v. Zenith Radio Corp, 475 U.S. 574, 586 (1986)]

At most, "any disputing evidence" that Defendant set forth is either inadmissible opinion evidence that the goods in question are not "counterfeit," or irrelevant factual contentions with regards to utterly nonsensical defenses relating to a "prior settlement" between the parties and res judicata. Defendant asserts that the contentions set forth in the Declaration of Dayanara Perez are "conclusions on the very point of the issue and inadmissible pursuant to FRCP 56(e), and then goes on to offer a myriad of unsubstantiated opinions as to the strength of the CC Mark, the similarity of the marks at issue, and the relevant degree of customer care. (see Defendant's Response, p. 9, 10, 11, 14) In fact, Defendant's counsel goes as far as to "[submit] that it is likely that not 1% of the people could recognize the trademark in question here" without the support of any supporting evidence or affidavit. (Id. at 14)

There is no dispute that Coach is the registered owner of the CC Mark. There is no dispute that Defendant, not Coach, imported and sold the products at issue in this case. Whether or not these products are counterfeits/infringing of Coach's products and whether or not summary judgment should be granted is a question for this court, and not the parties' respective employees or attorneys to decide after comparing the goods in question to the CC Mark. Defendant has not produced any specific evidence

through admissible discovery materially sufficient to satisfy its burden of showing that a dispute regarding its importation and sale of the Infringing Products actually exists. All the exhibits and testimony presented regarding Defendant's "prior settlement" and res judicata defenses are irrelevant, and presented solely to confuse the issues of this motion.

### III.   DEFENDANT'S PRODUCTS ARE INDEED COUNTERFEIT WITHIN THE MEANING OF THE LANHAM ACT

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." [15 U.S.C.A. §1127] Indeed the designs/patterns that appear on the Infringing Products are "counterfeit," since they are substantially indistinguishable from Coach's CC Mark.

The Infringing Products imported and sold by Defendant have essentially taken a mark substantially indistinguishable from the CC Mark and implemented it in the same manner as the CC Mark appears on genuine Coach merchandise.

There is no question that a consumer who is familiar with Coach's CC Mark would undoubtedly believe that the Infringing Products are those of Coach when encountered in the marketplace. While Defendant has enumerated slight, insignificant differences between the marks (see Defendants' Response, pp. 10-11), many of which are questionable at best, they are far outweighed by the similarities. "[W]hat is critical is the overall appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks." [Playmakers, LLC v. ESPN, Inc., 297 F.Supp.2d 1277, 1283 (W.D.Wash.2003), aff'd, 376 F.3d 894 (9th Cir.2004)] "The proper test for likelihood of confusion is not whether consumers would be confused in a side-by-side comparison of the products, but whether confusion is likely when a consumer, familiar with the one party's mark, is presented with the other party's goods alone." [E. & J. Gallo Winery v. Consorzio del Gallo Nero, 782 F.Supp. 457, 466 (N.D.Cal.1991); Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir.1980).] As one court aptly noted, "few would be stupid enough

to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." [Baker v. Master Printers Union, 34 F.Supp. 808, 811 (D.N.J.1940); cited by Adidas-America, Inc. v. Payless Shoe Source, Inc., 546 F.Supp.2d 1029, 1053 (D.Or. 2008)]

Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." [J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003) (emphasis added)] Here, although there may be minor differences between the font and orientations of the double C's, "the overall impression created by the marks is essentially the same, [and thus] it is very probable that the marks are confusingly similar." [4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24:22 (4th ed.2007); see also GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206 (9th Cir.2000) (finding actionable similarity despite use of different colors in logo); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (actionable similarity between "Century Investments & Realty" and "Century 21"); Saks & Co. v. Hill, 843 F.Supp. 620, 622 (S.D.Cal.1993) ("Saks Thrift Avenue" likely to be confused with "Saks Fifth Avenue"); Nabisco Brands, Inc. v. Kaye, 760 F.Supp. 25, 27 (D.Conn.1991) ("A2" steak sauce likely to be confused with "A1" steak sauce); Adidas-America, Inc. v. Payless Shoe Source, Inc., 546 F.Supp.2d at 1053 ("Payless cannot avoid liability for infringement merely by adding (or subtracting) an identical, parallel stripe to adidas' Three–Stripe Mark.")]

## IV. EVEN IF THE GOODS WERE NOT CONSIDERED "COUNTERFEIT," AN ANALYSIS OF THE *SLEEKRAFT* FACTORS WOULD STILL WARRANT SUMMARY JUDGMENT IN FAVOR OF COACH

At the very least, the Infringing Products infringe upon the CC Mark. In order to succeed on a trademark infringement claim, a plaintiff must establish: 1) that it has a

valid, protectable trademark, and 2) Defendant subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake. [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1046 (9th Cir. 1999); Toho Co. v. William Morrow Co., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998)] Defendant does not dispute the validity of Coach's CC Mark in its Response. Thus, the only issue is whether or not Defendant's goods are sufficiently similar to those of Plaintiffs' to create a likelihood of confusion.

The eight factors to be considered under the traditional Sleekcraft balancing test include the: 1) strength of the mark; 2) proximity or relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines. [Sleekcraft, 599 F.2d at 348-49; Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007 (9th Cir. 2001)]

### A. Strength of Coach's CC Mark

Although Defendant challenges the strength of the CC Mark, it has offered no evidence to support its position. The strength of a trademark is evaluated "in terms of its conceptual strength and commercial strength." [GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1207 (9th Cir.2000)]

With respect to conceptual strength, marks are generally classified by their placement on a continuum of increasing distinctiveness: generic, descriptive, suggestive, and fanciful or arbitrary. [E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d. 1280,1291 (9th Cir., 1992)] Suggestive, fanciful, and arbitrary marks are deemed inherently distinctive and entitled to the most protection because their intrinsic nature serves to identify a particular source of a product. [Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992)] In contrast, "generic" marks-or, names that refer to an entire class of products-are the weakest and receive no trademark protection. [Id.] A "descriptive" ( e.g., one that describes the quality or features of a product) mark may

be entitled to protection only if it has acquired distinctiveness through secondary meaning. [Two Pesos, 505 U.S. at 769]

Marks such as "letters, numbers, product and container shapes, and designs and pictures may also be classified as 'fanciful.'" [1 McCarthy, Trademarks and Unfair Competition at § 11:10] Contrary to Defendant's assertions, Coach does not intend to monopolize the use of the letter "C," nor is this case about Defendant's use of the letter "C" alone. Coach's CC Mark is distinctive and is comprised of eight C's, each oriented in a varying ways to make the CC Mark. The CC Mark is at the very least arbitrary because it neither defines, describes, nor suggests the products on which it appears. [See e.g. adidas-Salomon AG v. Target Corp., 2003 WL 25710435 (D.Or., 2003) (where Adidas three-stripe mark was found to be arbitrary because three stripes do not define, describe, or suggest the various products that bear them)]

"A mark's commercial strength refers to its degree of recognition in the minds of the relevant consumer class, most often measured by the amount of advertising." [Accuride Int'l, Inc. v. Accuride Corp., 871 F.2d 1531, 1536 (9th Cir.1989); see e.g. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (evidence of strength of mark includes expenditure of several million dollars in advertising services connected with the mark, and that the mark had been used in connection with sales of more than $1 billion)]

The amount of time a mark has been registered is not relevant in determining its strength – it is the amount of time the mark has actually been used in commerce that is relevant. Plaintiff's moving papers sets forth the (1) length of time in which the marks have been used (CC Mark has been used since 2001); (2) the sales volume; (3) significant advertising expenditures; and (4) prevalence in the marketplace and in the fashion industry. Defendant has offered no evidence to dispute the strength of these marks. At most, Defendant has put forth the completely basis rumination that "it its submitted that it is likely not 1% of people would recognize the trademark in question here." (see Defendant's Response, p. 14) Even worse, such statement was made

without the support of a sworn affidavit or other supporting evidence. Thus, this factor weighs heavily in favor of Coach.

### B.    Proximity or Relatedness of Goods

Defendant equivocates the meaning of "proximity of goods" in its Response by asserting "the proximity of goods test shows the genuine goods were not even in Lowe's or Wal-Mart so the proximity of the goods test does not help Plaintiff. (see Defendant's Response, p. 14) Once again, this contention is made without citation to a sworn affidavit or other supporting evidence. Unfortunately for Defendant, "proximity" refers to whether or not the goods are related or complementary, rather than the spatial proximity between the goods in the marketplace. Indeed, "Where goods are related or complementary, the danger of consumer confusion is heightened." [E. & J. Gallo, 967 F.2d at 1291] The public is likely to be confused as to the source when goods or services are related. [GoTo.com, Inc. v. Walt Disney Co., 202 F.3d. 1199, 1206 (9th Cir., 2000)] The parties' products are "reasonably interchangeable by buyers for the same purposes," and thus competitive. [McCarthy § 24.23] Where goods are directly competitive, "the degree of similarity of the marks needed to cause likely confusion is less than in the case of dissimilar goods...." [Id. § 24.22; see adidas v. Target, 228 F.Supp.2d at 1212–13 (denying defendant's motion for summary judgment on infringement claims, and noting that relatedness factor "favors adidas since defendants are using a four stripe design on a nearly identical product of athletic shoes")] Both Coach and Defendant are in the business of selling handbags, wallets, and luggage pieces – this is undisputed – and thus this factor weighs in favor of Plaintiffs.

Defendant contends that there can be no likelihood of confusion due to the difference in price range between Defendant's products and Coach's products. However, it is entirely possible for a purchaser to believe that they are purchasing authentic Coach product where it is very common these days to purchase off-price, overstock, or gray market luxury branded items at a lower price point from discount

stores and outlets. [K-Swiss, Inc. v. USA AISIQI Soes Inc., 291 F.Supp.2d 1116, 1125 (C.D.Cal., 2003) (Notwithstanding defendant's claim that the dissimilar price range is likely to make purchasers aware that the origin of the shoes is not K–Swiss, purchasers may assume that defendant's shoes are low-end lines produced by K–Swiss)]

Not only is point of sale confusion actionable under the Lanham Act, both initial interest confusion and post-sale confusion are forms of confusion protectable under the Lanham Act. "Initial interest confusion" occurs when a defendant's use of confusing trademark initially attracts the consumer to the defendant, and this confusion may still be an infringement even if no sale is consummated as a result of the confusion. [See e.g. Brookfield, 174 F.3d 1036, 1062–63; Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir., 1997); Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 257–58 (2d Cir., 1987)] "Initial interest confusion" has been likened to a "bait and switch" scheme, in that "potential customers are lured away from a trademark holder's product to a competitor's product through the deceptive use of the holder's mark." [Designer Skin, LLC v. S & L Vitamins, Inc., 560 F.Supp.2d 811, 818 (D.Ariz.2008)] Due to the striking similarity between Defendant's Infringing Products and authentic Coach Signature C products, consumers will likely see Defendant's products and assume they are those of Coach, only to find out that they are not.

What is even more damaging to the Coach brand is the risk of post-sale confusion, which occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product. [Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1455 (9th Cir., 1991)] "[S]uch confusion occurs, for example, when a consumer observes someone wearing a pair of Payless accused shoes and believes that the shoes are Reebok's. As a consequence, the consumer may attribute any perceived inferior quality of Payless shoes to Reebok, thus damaging Reebok's reputation and image." [Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 989 (Fed.Cir.1993)]

The likelihood of post-sale confusion is great here where the Infringing Products look nearly identical to authentic Coach key chains. A consumer who sees the key chains imported and sold by Defendant may question the direction in which the Coach brand is headed.

### C. Similarity of Marks

Similarity of the marks is tested on three levels: sight, sound, and meaning." [Sleekcraft, 599 F.2d at 351 (citation omitted)] "Each must be considered as they are encountered in the marketplace." [Id.; Nutri/Sys., Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 605-606 (9th Cir.1987); Official Airline Guides v. Goss, 6 F.3d 1385 (9th Cir., 1993)] A side-by-side comparison of Coach's products and Defendant's Infringing Products makes it clear that this factor weighs in favor of Plaintiffs.

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." [15 U.S.C.A. §1127] Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." [J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003)

This is exactly what has transpired with regards to the Infringing Products in this case – the arrangement and repetition of the "C" mimics the CC Mark as it appears on genuine Coach products. Furthermore, the overall construction of the Infringing Products (i.e. the materials used and the overall design) is identical to that of Coach's authentic products.



### D. Evidence of Actual Confusion

The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1050 (9th Cir. 1999)] Moreover, Coach need not prove actual confusion in order to prevail on a motion for summary judgment in a counterfeiting case. [Polo Fashions, Inc., 592 F. Supp. at 651] The counterfeiting of Coach products undermines the reputation of the Coach trademarks and reduces the demand for genuine Coach products. Given the striking similarity between Defendant's goods and authentic Coach goods, actual confusion among members of the public is more than likely.

### E. Marketing Channels Used

Defendant disingenuously argues that "Plaintiffs themselves admit that the 'marketing channels used' are not the same," and nebulously cites to the entirety of Dayana Perez' Declaration. In reality, Coach's moving papers convey the fact that both Coach and Defendant sell their products on a wholesale basis.

In any event, factors such as channels of trade and sophistication of consumers, while relevant to point of sale confusion, are not relevant to post-sale confusion. [adidas-Salomon AG v. Target Corp., 2003 WL 25710435, *7 (D.Or., 2003); citing to Payless Shoesource, Inc. v. Reebok Intern. Ltd., 998 F.2d 985, 988 (Fed. Cir., 1993)]

### F. Degree of Purchaser Care

Notwithstanding Defendant's claim that the dissimilar price range is likely to make purchasers aware that the origin of the shoes is not Coach, purchasers may assume that Defendant's shoes are low-end lines produced by Coach, off price items, diverted goods, or over stocked items. [see e.g. K-Swiss, Inc. v. USA AISIQI Soes Inc., 291 F.Supp.2d 1116, 1125 (C.D.Cal., 2003)]

### G. Defendant's Intent in Selecting the Mark

Defendant's contention that it did not "select or design" the Infringing Products is irrelevant. Defendant imported and sold such products in violation of the Lanham Act.

Ignorance is no defense to violations of the Lanham Act. [15 U.S.C. §1114; Phillip Morris, 352 F.Supp. 2d at 1073] Indeed, "sellers bear strict liability for violations of the Lanham Act". [Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir. 1983)] "Notably, as in the copyright realm, intentional infringement may lead to enhanced statutory damages, but is not required to prove defendant's liability." [Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005)]

### H. Likelihood of Expansion of Product Lines

As discussed above, the products sold by Coach and Defendant are the same, and both sell on a wholesale basis.

## V.  DEFENDANT'S "PRIOR SETTLEMENT" DEFENSE IS MERITLESS

Defendant asserts a rambling morass of an argument that ultimately raises the contention that Defendant was somehow a party to the settlement agreement between Coach and Hillman ("Hillman Settlement").  However, as Defendant admits, the fact remains that Defendant was not a party to the Hillman Settlement.  (See Deposition Transcript of Joseph Stringer, III filed in connection with Plaintiffs' Motion for Summary Judgment, 26:20 – 27:19; Declaration of Brent H. Blakely in Support of Plaintiffs' Reply Brief, ("Blakely Decl."), Ex. 1)  In fact, contrary to Defendant's unsupported, inadmissible claim that "Plaintiffs insisted on not including Defendant in the settlement" (see Defendant's Response, p. 15), Coach was not even aware of Siskiyou's existence until well after the Hillman Settlement was executed; Hillman was required to provide Coach with the identity of it supplier as part of the settlement agreement. (Blakely Decl., ¶¶ 7-8)

The consideration paid to Coach by Hillman in connection with the Hillman Settlement was exclusively on behalf of Hillman. (Blakely Decl., ¶ 9)  Moreover, Coach received no consideration from Defendant in connection with the Hillman Settlement. (Blakely Decl., ¶ 9)  As such, said settlement has no bearing on the instant dispute.

Furthermore, it is well established that Coach is not required to sue every defendant in a counterfeiting claim at the same time. "It is well established that a suit for infringement is analogous to other tort actions and infringers are jointly and severally liable; hence plaintiff need only sue participants as it sees fit." [Costello Publishing Co. v. Rotelle, 670 F.2d 1035, 1043 (DC Cir. 1981)] "Courts have long held that in patent, trademark, literary property, and copyright infringement cases, any member of the distribution chain can be sued as an alleged joint tortfeasor.  Since joint tortfeasors are jointly and severally liable, the victim of trademark infringement may sue as many or as few of the alleged wrongdoers as he chooses" [Wein v. Kaiser Stuhl Wine Distributors Pty., Ltd., 647 F.2d 200, 207 (1981)]

Defendant's business decision to pay a portion of the attorney's fees and other costs associated with Hillman Settlement in order to "retain a good relationship with its largest customer" (Declaration of J. Kenneth Stringer, ¶ 7) is of no consequence to Defendant's liability stemming from the importation and sale of counterfeit Coach products.

Defendant further argues that the "principles of equity" dictate that the settlement agreement should be construed as to contemplate Defendant as a party thereto. First, the settlement agreement, and whom it concerns, is governed by contract principles, not equity. Second, such an interpretation would be anything but equitable, as Coach only settled with Hillman. Once again, Coach received no consideration from Defendant in connection with the Hillman settlement.

Unsurprisingly, Defendant is unable cite to a sliver of legal authority to support the preposterous notion that a settlement agreement can be impliedly or equitably expanded to encompass nonparties thereto.

It is also telling that Defendant does not even attach a copy of the settlement agreement to its Response. The settlement agreement is a fully integrated agreement between Coach and Hillman that clearly and unequivocally does not include Hillman's suppliers. As such, Defendant's entire argument is barred by the doctrine of Parole Evidence.

## VI.   DEFENDANT'S "RES JUDICATA" DEFENSE IS MERITLESS

Defendant uses the term "res judicata" seventeen times and cites to eight cases that discuss res judicata as an affirmative defense. Despite its apparent affinity and familiarity for such doctrine, Defendant fails to mention that in order for res judicata to apply, there must be a final judgment on the merits, and such judgment must be between the same parties as in the present dispute [See Taylor v. Sturgell, 128 S.Ct.2161, 2171 (2008); Rest.2d Judgments § 18]

The Hillman Settlement and Coach's subsequent voluntary dismissal of the lawsuit filed against Wal-Mart, Lowe's, and Hillman in the Southern District of

California was not a final judgment on the merits. Furthermore, Defendant was not even a party to either the Hillman Settlement or the aforesaid lawsuit. As such, res judicata does not apply to the facts at hand.

## CONCLUSION

Based on the foregoing, Plaintiffs Coach, Inc. and Coach Services, Inc. respectfully request that this Court GRANT partial summary judgment in favor of Plaintiffs against Defendant Siskiyou Buckle Co., Inc. on the issue of liability for trademark infringement.

DATED:   March 7, 2012          BLAKELY LAW GROUP

                                By: _____
                                Brent H. Blakely
                                *Attorney for Plaintiffs*
                                *Coach Inc., and Coach Services, Inc.*