IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

COACH, INC., a Maryland Corporation,
and COACH SERVICES, INC., a
Maryland Corporation,

              Plaintiffs,

    v.

SISKIYOU BUCKLE CO., INC., an
Oregon Corporation dba SISKIYOU
GIFTS, and DOES 1-10,

              Defendants.

No. 03:11-CV-486-HZ

OPINION & ORDER

Christopher E. Hawk
Gordon & Rees LLP
121 SW Morrison Street, Suite 1575
Portland, OR 97204

/ / /
/ / /

1 - OPINION & ORDER

Brent H. Blakely
Blakely Law Group
915 North Citrus Avenue
Hollywood, CA 90038

    Attorneys for Plaintiffs

Donald A. Bick
Donald A. Bick, P.C.
1238 Throne Drive
Eugene, OR 97402

    Attorney for Defendants

HERNANDEZ, District Judge:

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Coach") brings this trademark infringement case against Defendant Siskiyou Buckle Co., Inc. ("Siskiyou"). Plaintiffs moved for partial summary judgment on the issue of liability for trademark infringement. Defendant moved for summary judgment on all claims for relief. If Defendant's motion is denied, in the alternative, Defendant moved for partial summary judgment on the issue of damages concerning all claims for relief. I deny Plaintiff's motion and deny both of Defendant's motions.

## BACKGROUND

Plaintiff Coach manufactures and sells various products, including handbags, wallets, eyewear, and apparel. Decl. of Dayanara Perez in Supp. Pls.' Mot. Summ. J. ("Perez Decl."), ¶ 3. Coach owns several trademarks. Id. at ¶ 4. The mark that is the subject of this dispute is perhaps Coach's most famous mark. Id. at ¶ 5. Pictured below, it is a pattern of four pairs of "C"s oriented in different directions ("CC mark").



<u>Id.</u>  The CC mark was registered (No. 2,832,589) with the U.S. Patent & Trademark Office ("USPTO") in 2002 to be used for various goods.  <u>Id.</u>; <u>id.</u> at Ex.1.  Products bearing the CC mark bring in millions of dollars in sales every year.  <u>Id.</u> at ¶ 8.  Coach products are sold throughout the U.S. and internationally in Coach retail stores and in major department stores.  <u>Id.</u> at ¶ 11.  Variations of Coach key chains are shown below.  <u>Id.</u> at Ex. 2 at 1.

 

3 - OPINION & ORDER

Defendant Siskiyou is a supplier of key chains with licensed logos, such as the National Football League. Decl. of J. Kenneth Stringer III in Supp. Def.'s Mot. Summ. J. ("Stringer Decl.") ¶ 3. One of Siskiyou's largest customers is The Hillman Group ("Hillman"). Id. at ¶ 4. In 2007, Siskiyou supplied Hillman with key chains that are at the center of this dispute. Id. The key chain was shaped like the sole of a flip flop and had a pattern of "C"s oriented in different directions, as pictured here.



Perez Decl. Ex. 2 at 2.

These flip flop key chains were sold in Lowe's and Wal-Mart stores. Stringer Decl. ¶ 6. In 2009, Coach sued Hillman—as well as Lowe's and Wal-Mart—in the Southern District of California, alleging that the flip flop key chains infringed Coach's CC mark. Decl. of Brent Blakely in Supp. Pls.' Mot. Summ. J. ("Blakely Decl.") ¶¶ 2-3. The California case settled all claims with prejudice. Decl. of Donald Bick in Supp. Def.'s Mot. Summ. J. ("Bick Decl.") ¶ 2. Prior to finalizing the settlement, Coach learned that Siskiyou had supplied Hillman with the flip flop key chains. Blakely Decl. ¶ 4. Siskiyou was not a party to the settlement agreement, nor was Siskiyou released from liability. Second Blakely Decl. in Supp. Coach MSJ Reply Ex. 1 at 1. Yet Siskiyou paid $57,500 towards the settlement on behalf of Hillman, assisted with the

4 - OPINION & ORDER


removal and destruction of the flip flop key chains, and paid half of Hillman's attorney's fees. Stringer Decl. ¶ 7.

Coach originally brought suit against Siskiyou in the Southern District of New York. Bick Decl. ¶ 1. Siskiyou moved to dismiss based on improper venue. Id. at ¶ 6. Coach then voluntarily dismissed the case and filed its complaint in this District. Id. Coach has alleged five claims for relief: trademark counterfeiting, trademark infringement, false advertising, trademark dilution, and unfair competition. Compl. at 5-12.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present "specific facts" showing a "genuine issue for trial." Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927-28 (9th Cir. 2009) (internal quotation omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court views inferences drawn from the facts

in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. Long v. City & County of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Coach moves for partial summary judgment with respect to liability of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, and requests a permanent injunction. Siskiyou moves on all five claims for relief, arguing that there is no infringement and that Coach's claims are barred by prior settlement, res judicata, and estoppel. If its motion is denied, Siskiyou moved in the alternative for partial summary judgment on the issue of damages.

A.   Trademark Infringement

Plaintiff Coach has moved on the issue of trademark infringement and Defendant Siskiyou has cross-moved. To prevail on a trademark infringement claim under the Lanham Act, a plaintiff must prove that the alleged infringer used the plaintiff's validly registered trademark or trade dress "in commerce," and that the use is "likely to cause confusion, or to cause mistake, or to deceive consumers" as to the source of the product. Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006). There is no dispute that Coach owns a protectable mark. Brookfield Communs. v. W. Coast Entm't Corp., 174 F.3d 1036, 1047 (9th Cir. 1999) (a mark registered with the USPTO is prima facie evidence of a valid, protectable mark). Defendant Siskiyou does not dispute that the allegedly infringing mark was used in commerce, as the key chains were sold in Lowe's and Wal-Mart stores. Thus, the remaining

6 - OPINION & ORDER

issue of infringement depends on a likelihood of confusion.  Coach argues that a likelihood of confusion is presumed for counterfeit goods.  Coach MSJ, 4.  I will address this presumption first.

    1.    Counterfeit Goods

"Counterfeit" is expressly defined in the Lanham Act as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark".  15 U.S.C. § 1127.  Coach argues that because a counterfeit good is identical, or virtually identical to the genuine good, the counterfeit good is inherently confusing, and thus a likelihood of confusion is presumed.  Coach MSJ, 5; Phillip Morris USA, Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004); Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987).  The question of whether Siskiyou's key chain is virtually identical to Coach's key chains is a question of fact.  Without concluding whether this presumption applies here, I find that there is a genuine issue of material fact as to whether Siskiyou's key chain is a counterfeit.

    2.    Likelihood of Confusion

Courts evaluate likelihood of confusion by weighing the following eight factors: (1) strength of plaintiff's mark; (2) proximity of the parties' goods; (3) similarity of trade or marketing channels; (4) similarity of the marks; (5) defendant's intent; (6) evidence of actual confusion; (7) type of goods and degree of care exercised by the average purchaser; and (8) likelihood of expansion of the product lines.  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979).  The Sleekcraft test is not rigid and "[o]ther variables may come into play depending on the particular facts presented."  Id. at 348 n11; see also Network Automation, Inc. v. Advanced Sys. Concepts, 638 F.3d 1137, 1145 (9th Cir. 2011) ("The Sleekcraft factors are intended as an adaptable proxy for consumer confusion, not a rote checklist.").  The weight of

7 - OPINION & ORDER

each factor is determined "in accordance with its relevance to the factual circumstances presented". Network Automation, 638 F.3d at 1149. Finally, neither intent to confuse nor actual confusion is required for a trademark infringement claim. Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1256 n16 (9th Cir. 1982); Brookfield Comm., 174 F.3d at 1050. Instead, the central inquiry is whether a "reasonably prudent customer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks" because of the similarities between the two marks. Dreamwerks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1129 (9th Cir. 1998). Given this framework, I begin my analysis of whether Siskiyou's key chain created a likelihood of confusion with Coach's key chains.

    1.    Strength of the Mark

"The stronger a mark — meaning the more likely it is to be remembered and associated in the public mind with the mark's owner — the greater the protection it is accorded by the trademark laws." Brookfield, 174 F.3d at 1058. Strength can be measured conceptually and commercially. Network Automation, 638 F.3d at 1149. Conceptually, a mark is stronger if the connection between the mark and the goods is not obvious. Id. Commercial strength may be evidenced by advertising expenditures. Id.

The CC mark is used on current Coach products. Perez Decl. ¶ 8. The products bearing the CC mark earn millions of dollars annually. Id. These products are sold nationally and abroad. Id. at ¶ 11. They also appear in advertisements in well-known fashion publications such as Vogue, Elle, and Vanity Fair. Id. at ¶12. Defendant does not dispute any of these facts. All of these statements show the commercial strength of the CC mark.

/ / /

/ / /

2.  Proximity of Goods

"Related goods are generally more likely than unrelated goods to confuse the public as to the producers of the goods." Brookfield, 174 F.3d at 1055; see also E & J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992) ("Where goods are related or complementary, the danger of consumer confusion is heightened."). In determining whether the product is likely to confuse, "less similarity between the marks will suffice when the goods are complementary, the products are sold to the same class of purchasers, or the goods are similar in use and function." Sleekcraft, 599 F.2d at 350 (citations omitted). Related goods are those "which would be reasonably thought by the buying public to come from the same source if sold under the same mark." Id. at 348 n10 (citation omitted).

Coach argues that there is proximity because Siskiyou and Coach both are in the business of selling key chains. Coach MSJ, 8. Siskiyou responds that Coach's products are not sold in stores like Lowe's and Wal-Mart. Siskiyou Resp., 14. Both parties give short shrift to this factor. Although both of the parties' goods are key chains, it is mischaracterization to say that Coach is in the business of selling key chains. As Coach readily admits, it manufactures and sells all of the following: key chains, handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories." Perez Decl. ¶ 3. There is also a question of whether Siskiyou and Coach appeal to the same class of consumer. Coach's key chains sell for an average of $35 at retail stores. Perez Decl. ¶ 14. There is no evidence in the record of the retail price of the Siskiyou key chain.

3.  Similarity of Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft, 599 F.2d at 353. In other words, it is important to consider to how and to whom the goods are sold.

9 - OPINION & ORDER

When the "general class" of purchasers of the parties' respective products is the same, confusion is more likely. Id. But significant differences in the price of the products or the type of stores (e.g., discount or specialty) at which the goods are sold may decrease the likelihood of confusion. L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1134 (Fed. Cir. 1993).

Coach sells its items at its own retail stores and at major department stores such as Macy's, Nordstrom, and Bloomingdales. Siskiyou's key chain was sold at Lowe's and Wal-Mart stores. Coach argues that because both Coach and Siskiyou sell their products on a wholesale basis, this factor should favor Coach. Coach MSJ, 9. I agree with Defendant that the type of store is relevant to this analysis.

4.   Similarity of Marks

The similarity of the marks "has always been considered a critical question in the likelihood-of-confusion analysis." GoTo.Com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000). "[T]he greater the similarity between the two marks at issue, the greater the likelihood of confusion." Id. at 1206. In the similarity analysis: "(1) Marks should be considered in their entirety and as they appear in the marketplace; (2) Similarity is best adjudged by appearance, sound, and meaning; and (3) Similarities weigh more heavily than differences." Entrepreneur Media, 279 F.3d at 1144.

The CC mark is a set of four coupled "C"s oriented in different directions. The pattern on Siskiyou's key chain is similar in that it has "C"s oriented in different directions, but the "C"s are not coupled. Another consideration is how the CC mark is used on the key chain. The CC mark repeats to form a pattern, but given the small surface area of the key chain, the most prominent feature is the letter "C", which is readily visible on both parties' goods.

/ / /

      5.      Defendant's Intent

As noted previously, a showing of intent to confuse consumers is not required for a finding of trademark infringement. Siskiyou claims that it only acted as a broker for Hillman, its customer, in procuring the key chains from China. Stringer Decl. ¶ 4. Siskiyou obtained a variety of designs for the key chain and Hillman ultimately selected the design. Id. Coach has not rebutted this assertion. Instead, Coach argues that Siskiyou was on "constructive notice" as to Coach's rights in the CC mark because it is widely used. Coach MSJ, 9. Coach also argues that Siskiyou did not have policies or procedures to ensure that it was not importing infringing goods. Blakely Decl. Ex. 2 at 6.

      6.      Actual Confusion

Like intent, actual confusion is not necessary for a finding of trademark infringement. Coach does not present any evidence of actual confusion. Coach MSJ, 8.

      7.      Degree of Consumer Care

"In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." Sleekcraft, 599 F.2d at 353. Where goods are expensive, and likely to be purchased after careful consideration, it is less likely that a reasonably prudent buyer would be confused as to the source of the goods. See id.

Coach argues that the degree of care used by the consumer is low because the good is a key chain and relatively inexpensive. Coach MSJ, 9. On the flip side, Siskiyou argues that purchasers of Coach products are likely to use more care because the product is expensive. Siskiyou Resp., 13. The focus is on the consumer who is buying the infringing product. The parties have argued that the Siskiyou key chain is inexpensive, but there is no evidence in the record of the retail price of the Siskiyou key chain.

11 - OPINION & ORDER

        8.       Likelihood of Expansion of Product Lines

"Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing. When goods are closely related, any expansion is likely to result in direct competition." Sleekcraft, 599 F.2d at 354 (citations omitted). Where two companies are direct competitors, this factor is unimportant. Cf. Brookfield, 174 F.3d at 1060. Coach argues that there is already a conversion of product lines because both parties distribute on a whole sale basis. Coach MSJ, 9. Siskiyou responds that it was only acting as a supplier to Hillman, and had no intention of competing with Coach. Siskiyou Resp., 13.

Based on the foregoing discussion of the factors, I find that genuine issues of material fact remain within the likelihood of confusion analysis. Some factors appear to favor Coach, and others Siskiyou. But with the evidence before me, I cannot find that there is a likelihood of confusion, nor can I find that there is not a likelihood of confusion. Plaintiff Coach's motion for partial summary judgment on trademark infringement is denied and Defendant Siskiyou's cross-motion for summary judgment is denied. As for Defendant's motion concerning the other claims of counterfeiting, false advertising, trademark dilution and unfair competition, I also deny summary judgment. Siskiyou failed to argue the merits of any of these claims.

B.      Claim Preclusion

Defendant Siskiyou asserts res judicata and estoppel as affirmative defenses. Answer, 5. Res judicata includes two concepts—claim preclusion and issue preclusion. Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 77 n1 (1984). "Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided.

12 - OPINION & ORDER

This effect also is referred to as direct or collateral estoppel. Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." Id. (citations omitted). Although estoppel is mentioned, Defendant only argues the merits of claim preclusion in its briefs, so I will restrict my analysis to the issue that Defendant has raised. Def.'s Memo Supp. Mot. Summ. J. ("Siskiyou MSJ"), 15-18.

Under the doctrine of claim preclusion, a final judgment on the merits rendered by a court of competent jurisdiction is conclusive and constitutes an absolute bar to a subsequent identical action against the same defendant or those in privity with that defendant. Montana v. United States, 440 U.S. 147, 153 (1979). A claim or cause of action is identical when "the suits arise out of the same transactional nucleus of facts." Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 406 (9th Cir. 1985). "Claim preclusion 'applies when there is (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between the parties.'" Cell Therapeutics, Inc. v. Lash Group, Inc., No. 08-35619, 586 F.3d 1204, 2009 U.S. App. LEXIS 25297, at *21; 2009 WL 3837544 (9th Cir. Nov. 18, 2009) (quoting Stewart v. U.S. Bancorp, 297 F.3d 953, 956 (9th Cir. 2002)).[1]

Neither party delves deeply into the merits of claim preclusion. Defendant Siskiyou generally argues that Coach should have brought its claims against Siskiyou in the California action, which seems to implicate the first element of identity of claims. Siskiyou MSJ, 16. Plaintiff Coach is likewise unhelpful, as it fails to address the first and third elements of claim preclusion—identity of claims and identity or privity between the parties. Coach argues that claim preclusion is inapplicable because the voluntary dismissal of the California case was not a

---

[1] Inexplicably, neither party recited these basic elements of claim preclusion in their briefs, nor did they provide relevant case law that applied these elements.

13 - OPINION & ORDER

final judgment on the merits and that the case did not involve the same parties as in the present dispute. Coach MSJ Reply, 13-14. Both arguments fail. Dismissal of an action with prejudice following a settlement is considered a "final judgment on the merits". International Union of Operating Engineers-Employers Constr. Indus. Pension, etc. v. Karr, 994 F.2d 1426, 1429 (9th Cir. 1993). And there is no requirement that the same parties be involved in the subsequent dispute.

Due to the parties' meek attempt of addressing claim preclusion, I cannot conclude that claim preclusion applies, or would not apply. Concerning the identity of claims element, "[c]laim preclusion…bars any subsequent suit on claims that were raised or could have been raised in a prior action." Id. (citing Stewart v. U.S. Bancorp, 297 F.3d at 956). "'It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought.'" Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003) (quoting United States ex rel. Barajas v. Northrop Corp., 147 F.3d 905 (9th Cir. 1998)). Defendant Siskiyou is an Oregon company. Siskiyou could have been added as a defendant since the cause of action arises from the same nucleus of facts—transactions involving the key chain. However, I am unable to conclude from the facts whether personal jurisdiction over Siskiyou could have been exercised.

The second element of claim preclusion requires a final judgment on the merits. As evidenced by the settlement agreement, it is undisputed that Coach settled the California case and voluntarily dismissed with prejudice. Second Blakely Decl. in Supp. Coach MSJ Reply Ex. 1 at 1, 5.

As explained previously, the third element of claim preclusion does not require identical parties. Privity may satisfy this element is met. "Federal courts have deemed several relationships sufficiently close to justify a finding of privity and, therefore, preclusion under the doctrine of [claim preclusion]:

> First, a non-party who has succeeded to a party's interest in property is bound by any prior judgment against the party. Second, a non-party who controlled the original suit will be bound by the resulting judgment. Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit.

United States v. Schimmels, 127 F.3d 875, 881 (9th Cir. 1997) (quotations omitted). None of these relationships seem applicable here to establish privity. However privity has been found in another instance. Defendant Siskiyou mentions the idea of a "virtual representative", but fell short of properly explaining the principle. Siskiyou MSJ, 18. As a "virtual representative", the nonparty "has a significant interest and participated in the prior action" and there is an "express or implied legal relationship by which parties to the first suit are accountable to non-parties who file a subsequent suit with identical issues." Id. (explaining privity was established between governmental authorities as public enforcers and private parties suing for enforcement). I cannot conclude whether there would be privity between Hillman and Siskiyou.

C.    Settlement of California Case

Defendant Siskiyou's last argument concerns the effect of the settlement agreement in the California case that Plaintiff brought against Lowe's, Wal-Mart, and Hillman. Siskiyou Resp. to Coach MSJ, 14. It is undisputed that Siskiyou was not a party to the settlement agreement. Id. Siskiyou urges me to look beyond the form of the agreement to find that it was indeed part of the settlement—given that Siskiyou paid for half of Hillman's legal fees, helped remove and destroy the key chains, and paid part of the settlement on behalf of Hillman. Id. Siskiyou also urges me

to find that Hillman had a fiduciary duty to Siskiyou because it partially paid for Hillman's legal fees. Id. Defendant does not cite to any cases to support either of these arguments. I am not persuaded by these unsupported arguments.

D.  Damages

Defendant Siskiyou, in the alternative, moved for partial summary judgment on the issue of damages if I were to deny its motion for summary judgment. I have denied its motion, so I will now address Siskiyou's alternative motion. If there is a violation of the Lanham Act, plaintiff may recover "(1) defendant's profits, (2) any damages sustained by the plaintiff," and (3) the costs of the action." 15 U.S.C. § 1117(a).

Siskiyou argues that it did not make a profit on the key chains. However, it is undisputed that Siskiyou sold 85,845 key chains to Hillman. Stringer Decl. ¶ 7. But approximately 50,700 key chains were removed and destroyed, and Siskiyou gave Hillman a credit of $38,000. Id. In sum, Siskiyou admits that it profited $26,383 from the key chains. Id. Siskiyou argues that there is no profit because it had to spend $17,200 to destroy the recovered key chains, paid Hillman $54,000 in recall costs, paid Hillman $57,500 for the settlement with Coach in the California case, and paid Hillman $19,500 for legal fees Hillman incurred in the California case. Id. Considering all these costs, Siskiyou contends that it has a net loss from the key chain sales. Siskiyou cites no legal authority to support the deduction of these costs from its profits, and I have found none that would.

As for Coach's damages, Siskiyou argues that because Coach customers do not shop at Lowe's or Wal-Mart, it is unfathomable that Coach lost any sales of its key chains. Def.'s Memo Supp. Alternative Mot. Summ. J. ("Damages MSJ"), 2. Coach claims that it lost profits of more than $2.4 million because there is an approximate $29.31 profit margin on each Coach key chain.

Coach Resp. to Damages MSJ, 8; Perez Decl. Supp. Coach's Resp. to Damages MSJ ("Second Perez Decl."), ¶¶ 3-4. The $2.4 million is based on the original number of key chains supplied to Hillman (85,845). Coach Resp. to Damages MSJ, 8. Coach overreaches with this calculation. First, Coach has not established that a consumer buying Siskiyou's key chain would have paid $35 for a Coach key chain. Second, a majority of the Siskiyou's key chains (50,700) were removed from the stores before a sale occurred. I do not find Coach's argument persuasive regarding its $2.4 million in lost profits. Coach also claims statutory damages if the goods are found to be counterfeit or if Siskiyou's conduct was intentional. Coach Resp. to Damages MSJ, 5. Coach's claims are not solely dependent on Coach losing sales of key chains for its actual damages. I deny Defendant's motion for partial summary judgment on damages.

E.     Evidentiary Objections

Plaintiff Coach made several evidentiary objections to the declaration submitted by Donald Bick, Defendant Siskiyou's counsel, and J. Kenneth Stringer III, President of Siskiyou. Many of the objections were unfounded or unimportant to the disposition of the issues. To the extent I relied on a fact that was objected, I have overruled the objection. As for the other objections, they were unnecessary and are moot.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

17 - OPINION & ORDER

# CONCLUSION

Plaintiff's motion for partial summary judgment on the issue of trademark infringement (#16) and its request for a permanent injunction are denied. Defendant's motion for summary judgment (#20) and Defendant's alternative motion for partial summary judgment on damages (#22) are denied.

IT IS SO ORDERED.

Dated this  27th  day of April, 2012.

/s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge