**Christopher E. Hawk** (OSB 061635)
chawk@gordonrees.com
**GORDON & REES LLP**
121 SW Morrison, Suite 1575
Portland, Oregon 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600
*Attorneys for Plaintiffs Coach, Inc.*
*and Coach Services, Inc.*

**Brent H. Blakely** *(Pro Hac Vice)*
bblakely@blakelylawgroup.com
**BLAKELY LAW GROUP**
915 North Citrus Ave.
Hollywood, CA 90038
Telephone: (323) 464-7400
Facsimile: (323) 464-7410
*Attorneys for Plaintiffs Coach, Inc.*
*and Coach Services, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **COACH, INC.**, a Maryland Corporation; **COACH SERVICES, INC.**, a Maryland Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**SISKIYOU BUCKLE CO., INC.**, an Oregon Corporation dba SISKIYOU GIFTS; DOES 1-10, inclusive,<br><br>Defendants. | CASE NO: 3:11-cv-00486-HZ<br><br>**PLAINTIFFS' MEMORANDUM OF CONTENTIONS OF FACT & LAW**<br><br>Pre-Trial conference: 05/30/2012<br>Jury Trial: 06/04/2012<br><br>**Honorable Marco A. Hernandez** |

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs" or "Coach") hereby submit their Memorandum of Contentions of Fact and Law concerning the aforementioned matter:

## I. CLAIMS AND DEFENSES

### a. Summary Statement of Plaintiffs' Claims

Claim 1:     Trademark Counterfeiting

Claim 2:     Trademark Infringement

Claim 3:     False Designations of Origin and False Descriptions, Trade Dress Infringement.

Claim 4:     Federal Trademark Dilution

Claim 5: Common Law Unfair Competition

### b. Elements Required to Establish Plaintiffs' Claims

*L Claims 1 and 2 — Trademark Counterfeiting and Trademark Infringement*

In order to succeed on a trademark infringement claim, a plaintiff must establish: 1) that it has a valid, protectable trademark, and 2) Defendant subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake. [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1046 (9th Cir. 1999); Toho Co. v. William Morrow Co., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998)]

The Ninth Circuit has traditionally applied an eight factor balancing test in order to determine whether a defendant's infringement caused a likelihood of confusion. [See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)] The eight factors to be considered under the traditional Sleekcraft balancing test include the: 1) strength of the mark; 2) proximity or relatedness of the goods; 3) similarity of the marks; 4) evidence of actual confusion; 5) marketing

channels used; 6) type of goods and the degree of care likely to be exercised by the purchaser; 7) defendant's intent in selecting the mark; and 8) likelihood of expansion of product lines. [Sleekcraft, 599 F.2d at 348-49; Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007 (9th Cir. 2001)]

"In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination [of the factors] because counterfeit marks are inherently confusing." [Id.] "Multi-factored balancing is unnecessary in cases . . . where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods." [General Motors Corp. v. Autovation Technologies, Inc., 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004) (In counterfeiting cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another.")]

While the Lanham Act's likelihood of confusion standard is predominantly factual in nature, the likelihood of confusion is presumed in a case where the defendant has manufactured, sold, or distributed counterfeit goods. [See Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); Philip Morris U.S.A. Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); General Motors Corp.,*supra* ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design")]

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." [15 U.S.C.A. §1127] As J. Thomas McCarthy instructs, "A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the

genuine mark. Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." [J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003) (emphasis added)]

"Trade dress" refers to the design or packaging of a product which serves to identify the product's source. [TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28 (2001)] To recover for trade dress infringement under § 43(a), a party must prove by a preponderance of the evidence: 1) that the trade dress in question is distinctive in the marketplace, thereby indicating the source of the good it dresses, 2) that the trade dress is primarily nonfunctional, and 3) that the trade dress of the competing good is confusingly similar. [See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210 (2000)]

### ii. Claims 3 — 5 — False Designations of Origin, Dilution, and Unfair Competition

Once trademark infringement liability is found, liability as to Plaintiffs' unfair competition and dilution claims will follow. [M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th Cir., 2005) (stating that "[t]he test for trademark infringement under state, federal, and common law is whether there will be a likelihood of confusion"); Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 874 (9th Cir., 1999) (discussing the substantial similarity between California's dilution statute and the Federal Trademark Dilution Act); Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir.1994) (stating that the Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act")]

## II. KEY EVIDENCE IN SUPPORT OF PLAINTIFFS' CLAIMS

### a. Coach and its Famous CC Mark

Coach was founded more than seventy years ago as a family-run workshop in a Manhattan loft. Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories.

Coach Services, Inc., Coach, Inc.'s wholly owned subsidiary (hereinafter collectively "Coach"), is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components ("Coach Marks"). Amongst the many Coach Marks, one of the most well known and recognized mark is Coach's "CC CC CC CC" Mark ("CC Mark") shown below.



The CC Mark was first registered at the U.S. Patent and Trademark Office in 2002. The CC Mark is registered for a wide array of goods, including eyewear. Coach has used the CC Mark in association with the sale of goods in its "Signature" line of goods since as early as 2001. Coach's "Signature" line of goods features repetitions of the CC Mark in various sizes, colors, and patterns.

Coach's CC Mark is one of Coach's most iconic trademarks. Coach has derived substantial income from the sale of products bearing the CC Mark. Coach continues to sell products bearing the CC Mark to this date, and products bearing the CC Mark continue to earn millions of dollars in sales per year. Coach and its predecessors have expended millions of dollars in advertising, promoting, and marketing goods featuring the CC Mark.

Coach products are distributed throughout the United States and worldwide in both Coach retail stores and department stores such as Bloomingdales, Nordstrom, Macy's, and Lord and Taylor, and its official website www.coach.com. The Coach brand of products has been praised and recognized in numerous articles appearing in both trade publications and publications directed to the general public. Publications such as Elle, Bazaar, InStyle, Vogue, Cosmopolitan, Marie Claire, and Vanity Fair, have all featured Coach products, most notably the Signature C line of goods.

Due to Coach's long use, extensive sales, significant advertising and promotional activities, the CC Mark has achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States.

### b. Defendants' Infringement of Coach's CC Mark

Defendant Siskiyou Buckle Co., Inc. ("Defendant" or "Siskiyou"), an Oregon corporation located at 3551 Avion Drive, Medford, Oregon 97504, is an importer and wholesaler of key chains, key fobs, and related accessories.

In or around August, 2010, Coach learned that Siskiyou had supplied The Hillman Group, Inc. ("Hillman"), a defendant in a prior action filed by Coach in the Southern District of New York (10-CV-8547(RWS)), with key fobs bearing counterfeit reproductions of Coach's CC Mark ("Infringing Products").

Coach representatives have examined the Infringing Products, depicted below, and determined such products to be counterfeit:



   Defendant is not authorized by Coach to manufacture, sell or offer for sale products bearing any of Coach's trademarks, trade dresses, and/or copyrighted designs. Moreover, Defendant is not a licensee of Coach or in any other manner licensed to import, sell, distribute, or manufacture any merchandise bearing Coach's trademarks and/or copyrighted works.

DATED: May 2, 2012

  /s/Brent H. Blakely
**Brent H. Blakely** *(Pro Hoc Vice)*
bblakely@blakelylawgroup.com
BLAKELY LAW GROUP
915 North Citrus Ave.
Hollywood, CA 90038
Telephone: (323) 464-7400
Facsimile: (323) 464-7410

**Christopher E. Hawk** (OSB 061635)
chawk@gordonrees.com
GORDON AND REES, LLP
121 SW Morrison, Suite 1575
Portland, Oregon 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

**ATTORNEYS FOR PLAINTIFFS COACH INC. AND COACH SERVICES, INC.**