**Christopher E. Hawk** (OSB 061635)
chawk@gordonrees.com
**GORDON & REES LLP**
121 SW Morrison St., Suite 1575
Portland, Oregon 97204
Telephone: (503) 222-1075
Facsimile: (503) 616-3600

**Brent H. Blakely (*Pro Hac Vice*)**
bblakely@blakelylawgroup.com
Blakely Law Group
915 North Citrus Ave.
Hollywood, CA 90038
Telephone: (323) 464-7400
Facsimile: (323) 464-7410
*Attorneys for Plaintiffs Coach, Inc.*
*and Coach Services, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| **COACH, INC., a Maryland Corporation; COACH SERVICES, INC., a Maryland Corporation,** | **CASE NO: 3:11-cv-00486-HZ** |
| **Plaintiffs,** | **JOINT AGREED UPON JURY INSTRUCTIONS 1-26; PLAINTIFF'S PROPOSED INSTRUCTIONS 27-59** |
| **v.** | |
| **SISKIYOU BUCKLE CO., INC., an Oregon Corporation dba SISKIYOU GIFTS; DOES 1-10, inclusive,** | Pre-Trial Conference:    05/30/2012<br>Jury Trial:                      06/04/2012 |
| **Defendants.** | |

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs" or "Coach") and Defendant Siskiyou Buckle Co., Inc. ("Defendant" or "Siskiyou") respectfully submit the attached Agreed Upon Jury Instructions for use in the trial of this action. Plaintiffs and Defendant reserve the right to supplement, modify or amend these proposed forms as appropriate to take account of, among other things, any new facts, evidence or rulings of the Court in this action.

DATED:    May 9, 2012        BLAKELY LAW GROUP

                By:    /s/ Brent Blakely_____
                       Brent Blakely
                       *Attorneys for Plaintiffs*
                       *Coach, Inc. and Coach Services, Inc.*


DATED:    May 9, 2012        DONALD A. BICK, PC

                By:    /s/ Donald A. Bick_____
                       Donald A. Bick
                       *Attorneys for Defendant*
                       *Siskiyou Buckle Co., Inc.*

# **INDEX**

INSTRUCTION NO. 1 - DUTY OF JURY  .............................................................8

INSTRUCTION NO. 2 – DUTY OF JURY ............................................................10

INSTRUCTION NO. 3 – DUTY OF JURY...............................................................11

INSTRUCTION NO. 4 – CLAIMS AND DEFENSES  ...........................................13

INSTRUCTION NO. 5 – PREPONDERANCE OF THE EVIDENCE .................14

INSTRUCTION NO. 6 – CLEAR AND CONVINING EVIDENCE  ...................15

BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE...................15

INSTRUCTION NO. 7 – BLANK  ..........................................................................16

INSTRUCTION NO. 8 – WHAT IS EVIDENCE  ..................................................16

INSTRUCTION NO. 9 – WHAT IS NOT EVIDENCE  .........................................18

INSTRUCTION NO. 10 – EVIDENCE FOR LIMITED PURPOSE ....................19

INSTRUCTION NO. 11 – DIRECT AND CIRCUMSTANTIAL EVIDENCE ...20

INSTRUCTION NO. 12 – RULING ON OBJECTIONS  .......................................21

INSTRUCTION NO. 13 – CREDIBILITY OF WITNESSES ...............................22

INSTRUCTION NO. 14 – CONDUCT OF THE JURY .........................................23

INSTRUCTION NO. 15 – NO TRANSCRIPT AVAILABLE FOR JURY ..........25

INSTRUCTION NO. 16 – TAKING NOTES .......................................................26

INSTRUCTION NO. 17 – QUESTIONS TO WITNESSES BY JURORS ...........27

INSTRUCTION NO. 18 – BENCH CONFERENCES AND RECESSES ...........29

INSTRUCTION NO. 19 – OUTLINE OF TRIAL .................................................30

INSTRUCTION NO. 20 – STIPULATIONS OF FACT  ......................................31

INSTRUCTION NO. 21 – USE OF INTERROGATORIES BY PARTY  ...........32

INSTRUCTION NO. 22 – DUTY TO DELIBERATE .........................................33

INSTRUCTION NO. 23- COMMUNICATION WITH COURT ..........................34

INSTRUCTION NO. 24 – RETURN OF VERDICT  ...........................................35

INSTRUCTION NO. 25 – ADDITIONAL INSTRUCTIONS OF LAW ..............36

INSTRUCTION NO. 26 – DEADLOCKED JURY ...............................................37

INSTRUCTION NO. 27 – DAMAGES – PROOF .................................................40

INSTRUCTION NO. 28 – PRELIMINARY INSTRUCTION – TRADEMARK  42

INSTRUCTION NO. 29 – DEFINITION – TRADEMARK GENERALLY ........43

INSTRUCTION NO. 30 – THEORIES AND POLICIES  ......................................44

INSTRUCTION NO. 31 - TRADEMARK INFRINGEMENT – ELEMENTS AND BURDEN OF PROOF ............................................................................46

INSTRUCTION NO. 32 - BLANK ....................................................................47

INSTRUCTION NO. 33 -  TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – SLEEKCRAFT TEST ............48

INSTRUCTION NO. 34 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – STRENGTH OF MARK .........50

INSTRUCTION NO. 35 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – USE OF MARK ......................52

INSTRUCTION NO. 36 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – SIMILARITY OF THE MARKS ............................................................................................54

INSTRUCTION NO. 37 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – SIMILARITY OF MARKS – SIDE BY SIDE COMPARISON IS INAPPROPRIATE ................................................................55

INSTRUCTION NO. 38 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – ACTUAL CONFUSION .........56

INSTRUCTION NO. 39 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – DEFENDANT'S INTENT IN ADOPTING MARK ....................................................................................57

INSTRUCTION NO. 40 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – SIMILARITY OF CHANNELS OF TRADE ....................................................................................59

INSTRUCTION NO. 41 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – CONSUMER'S DEGREE OF CARE ..........................................................................................60

INSTRUCTION NO. 42 - TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – CLOSE CASE RESOLVED IN FAVOR OF SENIOR USER ........................................................................62

INSTRUCTION NO. 43 - INTENTIONAL INFRINGEMENT.............................63

INSTRUCTION NO. 44 - TRADEMARK INFRINGEMENT—ELEMENTS— LIKELIHOOD OF CONFUSION—TIMING OF CONFUSION ..........................64

INSTRUCTION NO. 45 - TRADEMARK INFRINGEMENT – COUNTERFEIT MARKS....................................................................................66

INSTRUCTION NO. 46 - UNFAIR COMPETITION; FALSE DESIGNATIONS OF ORIGIN...................................................................................68

INSTRUCTION NO. 47 - TRADEMARK DILUTION ........................................69

INSTRUCTION NO. 48 - TRADEMARK DILUTION – WHAT IS A "FAMOUS" MARK?.......................................................................................70

INSTRUCTION NO. 49 - TRADEMARK DILUTION – BLURRING & TARNISHMENT ...........................................................................71

INSTRUCTION NO. 50 - TRADEMARK INFRINGEMENT DAMAGES .........73

INSTRUCTION NO. 51- TRADEMARK INFRINGEMENT DAMAGES – PLAINTIFF'S ACTUAL DAMAGES ...................................................................74

INSTRUCTION NO. 52- TRADEMARK INFRINGEMENT DAMAGES – DEFENDANT'S PROFITS ....................................................................76

INSTRUCTION NO. 53 - TRADEMARK INFRINGEMENT DAMAGES- DEFENDANT'S PROFITS – WILLFULNESS ......................................................77

INSTRUCTION NO. 54 - TRADEMARK COUNTERFEITING – STATUTORY DAMAGES ...........................................................................78

INSTRUCTION NO. 55 - TRADEMARK DILUTION-DAMAGES- WILLFULLNESS ...........................................................................79

INSTRUCTION NO. 56 - TRADEMARK DILUTION-DAMAGES-ACTUAL DAMAGES ...........................................................................80

INSTRUCTION NO. 57 - TRADEMARK DILUTION-DAMAGES- DEFENDANT'S PROFITS ....................................................................81

INSTRUCTION NO. 58 - BLANK .......................................................................82

INSTRUCTION NO. 59 - DAMAGES – PUNITIVE DAMAGES .......................83

# INSTRUCTION NO. 1

## DUTY OF JURY

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it. You will be allowed to keep this set throughout the trial to which to refer. This set of instructions is not to be taken home and must remain in the jury room when you leave in the evenings. At the end of the trial, I will give you a final set of instructions. It is the final set of instructions which will govern your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

<u>Authorities:</u> 9th Cir. 1.1A

## INSTRUCTION NO. 2

## DUTY OF JURY (COURT READS INSTRUCTIONS ONLY)

Ladies and gentlemen: You are now the jury in this case. It is my duty to instruct you on the law.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

Authorities: 9th Cir. 1.1B

# INSTRUCTION NO. 3

## DUTY OF JURY (COURT READS AND PROVIDES
## WRITTEN INSTRUCTIONS AT END OF CASE)

Members of the Jury: Now that you have heard all of the evidence [and the arguments of the attorneys], it is my duty to instruct you as to the law of the case.

[Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.]

or

[A copy of these instructions will be sent with you to the jury room when you deliberate.]

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

<u>Authorities:</u> 9th Cir. 1.1C

# **INSTRUCTION NO. 4**

## **CLAIMS AND DEFENSES**

To help you follow the evidence, I will give you a brief summary of the positions of the parties:

Plaintiffs claim that Defendant is liable for trademark infringement; specifically (1) Trademark Counterfeiting in violation of the Lanham Act; (2) Trademark Infringement in violation of the Lanham Act; (3) False Designations of Origin/False Descriptions in violation of the Lanham Act; (4) Trademark Dilution under Lanham Act; and (5) Unfair Competition in violation of Oregon law. The plaintiff has the burden of proving these claims.

Defendant denies those claims.

Authorities: 9th Cir. 1.2

## INSTRUCTION NO. 5

## BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

Authorities: 9th Cir. 1.3

## INSTRUCTION NO. 6

## BURDEN OF PROOF – CLEAR AND CONVINCING EVIDENCE

When a party has the burden of proving any claim or defense by clear and convincing evidence, it means you must be persuaded by the evidence that the claim or defense is highly probable. This is a higher standard of proof than proof by a preponderance of the evidence.

You should base your decision on all of the evidence, regardless of which party presented it.

Authorities:  9th Cir. 1.4

## **INSTRUCTION NO. 7**

**Intentionally left blank**

# **INSTRUCTION NO. 8**

## **WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

1. the sworn testimony of any witness;

2. the exhibits which are received into evidence; and

3. any facts to which the lawyers have agreed.

Authorities:  9th Cir. 1.6

## INSTRUCTION NO. 9
## WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1)     Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition sometimes testimony and exhibits are received only for a limited purpose; when I [give] [have given] a limiting instruction, you must follow it.

(4)     Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

Authorities:  9th Cir. 1.7

## **INSTRUCTION NO. 10**

## **EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted for a limited purpose only.

When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

Authorities: 9th Cir. 1.8

## <u>INSTRUCTION NO. 11</u>
**DIRECT AND CIRCUMSTANTIAL EVIDENCE**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common sense.

<u>Authorities:</u> 9th Cir. 1.9

# INSTRUCTION NO. 12
## RULING ON OBJECTIONS

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means that when you are deciding the case, you must not consider the evidence that I told you to disregard.

Authorities:  9th Cir. 1.10

## **INSTRUCTION NO. 13**
## **CREDIBILITY OF WITNESSES**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it.

In considering the testimony of any witness, you may take into account:

    (1)    the opportunity and ability of the witness to see or hear or know the things testified to;

    (2)    the witness's memory;

    (3)    the witness's manner while testifying;

    (4)    the witness's interest in the outcome of the case and any bias or prejudice;

    (5)    whether other evidence contradicted the witness's testimony;

    (6)    the reasonableness of the witness's testimony in light of all the evidence; and;

    (7)    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

Authorities:  9th Cir. 1.11

## INSTRUCTION NO. 14
## CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone or electronic means, via e-mail, text messaging, or any Internet chat room, blog, Web site or other feature. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address. A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

<u>Authorities:</u>  9th Cir. 1.12

## INSTRUCTION NO. 15

## NO TRANSCRIPT AVAILABLE TO JURY

During deliberations, you will have to make your decision based on what you recall of the evidence. You will not have a transcript of the trial. I urge you to pay close attention to the testimony as it is given.

If at any time you cannot hear or see the testimony, evidence, questions or arguments, let me know so that I can correct the problem.

Authorities:  9th Cir. 1.13

## **INSTRUCTION NO. 16**

### **TAKING NOTES**

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. Do not let note-taking distract you. When you leave, your notes should be left in the jury room. No one will read your notes. They will be destroyed at the conclusion of the case.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of your fellow jurors.

<u>Authorities:</u>  9th Cir. 1.14

# INSTRUCTION NO. 17

## QUESTIONS TO WITNESSES BY JURORS - INSTRUCTION

You will be allowed to propose written questions to witnesses after the lawyers have completed their questioning of each witness. You may propose questions in order to clarify the testimony, but you are not to express any opinion about the testimony or argue with a witness. If you propose any questions, remember that your role is that of a neutral fact finder, not an advocate.

Before I excuse each witness, I will offer you the opportunity to write out a question on a form provided by the court. Do not sign the question. I will review the question with the attorneys to determine if it is legally proper.

There are some proposed questions that I will not permit, or will not ask in the wording submitted by the juror. This might happen either due to the rules of evidence or other legal reasons, or because the question is expected to be answered later in the case. If I do not ask a proposed question, or if I rephrase it, do not speculate as to the reasons. Do not give undue weight to questions you or other jurors propose. You should evaluate the answers to those questions in the same manner you evaluate all of the other evidence.

By giving you the opportunity to propose questions, I am not requesting or suggesting that you do so. It will often be the case that a lawyer has not asked a question because it is legally objectionable or because a later witness may be addressing that subject.

Authorities:  9th Cir. 1.15

## INSTRUCTION NO. 18
## BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

Authorities:  9th Cir. 1.18

# INSTRUCTION NO. 19
## OUTLINE OF TRIAL

Trials proceed in the following way: First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show. A party is not required to make an opening statement.

The plaintiff will then present evidence, and counsel for the defendant may cross-examine. Then the defendant may present evidence, and counsel for the plaintiff may cross-examine.

After the evidence has been presented, I will instruct you on the law that applies to the case and the attorneys will make closing arguments.

After that, you will go to the jury room to deliberate on your verdict.

Authorities:  9th Cir. 1.19

## INSTRUCTION NO. 20

## STIPULATIONS OF FACT

The parties have agreed to certain facts that will be read to you. You should therefore treat these facts as having been proved.

Authorities:  9th Cir. 2.2; United States v. Mikaelian,168 F.3d 380, 389 (9th Cir.1999) (citing United States v. Houston, 547 F.2d 104, 107 (9th Cir.1976)), amended by 180 F.3d 1091 (9th Cir.1999).

## <u>INSTRUCTION NO. 21</u>

### USE OF INTERROGATORIES OF A PARTY

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers [have been] [were] given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

<u>Authorities</u>: 9th Cir. 2.10

# INSTRUCTION NO. 22
## DUTY TO DELIBERATE

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

Authorities:  9th Cir. 3.1

## **INSTRUCTION NO. 23**

## **COMMUNICATION WITH COURT**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

<u>Authorities:</u>  9th Cir. 3.2

## **INSTRUCTION NO. 24**

## **RETURN OF VERDICT**

A verdict form has been prepared for you. [*Any explanation of the verdict form may be given at this time.*] After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.

Authority

9th Cir. 3.3

## **INSTRUCTION NO. 25**
## **ADDITIONAL INSTRUCTIONS OF LAW**

At this point I will give you a further instruction. By giving a further instruction at this time, I do not mean to emphasize this instruction over any other instruction.

You are not to attach undue importance to the fact that this was read separately to you. You shall consider this instruction together with all of the other instructions that were given to you.

[Insert text of new instruction.]

You will now retire to the jury room and continue your deliberations.

<u>Authority:</u>  9th Cir. 3.4

## **INSTRUCTION NO. 26**
## **DEADLOCKED JURY**

Members of the jury, you have advised that you have been unable to agree upon a verdict in this case. I have decided to suggest a few thoughts to you.

As jurors, you have a duty to discuss the case with one another and to deliberate in an effort to reach a unanimous verdict if each of you can do so without violating your individual judgment and conscience. Each of you must decide the case for yourself, but only after you consider the evidence impartially with your fellow jurors. During your deliberations, you should not hesitate to reexamine your own views and change your opinion if you become persuaded that it is wrong. However, you should not change an honest belief as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

All of you are equally honest and conscientious jurors who have heard the same evidence. All of you share an equal desire to arrive at a verdict. Each of you should ask yourself whether you should question the correctness of your present position.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

You may now retire and continue your deliberations.

<u>Authority:</u>  9th Cir. 3.5

## PLAINTIFF'S PROPOSED INSTRUCTIONS

Plaintiffs Coach, Inc. and Coach Services, Inc. ("Plaintiffs" or "Coach") respectfully submit the attached Proposed Jury Instructions for use in the trial of this action.  Plaintiffs reserve the right to supplement, modify or amend these proposed forms as appropriate to take account of, among other things, any new facts, evidence or rulings of the Court in this action.


DATED:      May 9, 2012          BLAKELY LAW GROUP

                                 By:   /s/ Brent Blakely_____
                                       Brent Blakely
                                       *Attorneys for Plaintiffs*
                                       *Coach, Inc. and Coach Services, Inc.*

# INSTRUCTION NO. 27

## DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for plaintiffs, you must determine the plaintiffs' damages. The plaintiffs have the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant. You should consider the following:

The Lanham Act permits the award of monetary remedies in trademark infringement cases includes an award of defendant's profits, and any damages sustained by plaintiff. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.

As an alternative to actual damages under § 1117(a), plaintiffs may seek an award of statutory damages of not less than $1,000 but not more than $200,000 for non-willful infringement, and up to $2 million for willful infringement per counterfeit mark per type of good infringed pursuant to 15 U.S.C. § 1117(c) of the Lanham Act.

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

<u>Authority</u>:  9th Cir. 5.1; 15 U.S.C § 1117

<u>**INSTRUCTION NO. 28**</u>

**PRELIMINARY INSTRUCTION – TRADEMARK**

Plaintiffs Coach, Inc. and Coach Services, Inc. (collectively "Plaintiffs" or "Coach") seek damages against Defendant Siskiyou Buckle Co., Inc. for trademark counterfeiting, trademark infringement, false designations of origin, trademark dilution, and unfair competition. Defendant denies liability as to all claims alleged.

To help you understand the evidence that will be presented in this case, I will explain some of the legal terms you will hear during this trial.

**DEFINITION OF A TRADEMARK**

A trademark is a word, a name, a symbol, a device, or a combination of them that indicates the source of goods. The owner of a trademark has the right to exclude others from using that trademark.

**HOW A TRADEMARK IS OBTAINED**

A person acquires the right to exclude others from using a trademark by being the first to use it in the marketplace. Rights in a trademark are obtained only through commercial use of the mark. The owner of a trademark has the right to exclude others in an action for infringement.

<u>Authorities</u>:  9th Cir. 15.0

## **INSTRUCTION NO. 29**

## **DEFINITION-TRADEMARK GENERALLY (15 U.S.C. § 1127)**

A trademark is any word, name, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods, even if that source is generally unknown.

A person who uses the trademark of another may be liable for damages.

Authorities

9th Cir. 15.1

# INSTRUCTION NO. 30
## THEORIES AND POLICIES

The trademark laws balance three often-conflicting goals: 1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market; 2) protecting the rights of a business to identify itself to the public and its reputation in offering goods and services to the public; and 3) protecting the public interest in fair competition in the market.

The balance of these policy objectives vary from case to case, because they may often conflict. Accordingly, each case must be decided by examining its specific facts and circumstances, of which you are to judge.

In my instructions, I will identify types of facts you are to consider in deciding if the Defendant is liable to the Coach for violating the trademark law. These facts are relevant to whether Defendant is liable for:

  (1) selling counterfeit reproductions of Coach's authentic goods;

  (2) infringing Coach's registered trademarks rights, by using a trademark in a manner likely to cause confusion among consumers;

  (3) unfairly competing, by using a trademark in a manner likely to cause confusion as to the origin or quality of plaintiff's goods;

  (4) diluting Coach's registered trademarks by eroding the public's exclusive identification of that mark with Coach.

Authorities:  9th Cir. 15.4; 15 U.S.C. §§ 1114, 1125; <u>Mattel, Inc. v. Walking Mountain Productions</u>, 353 F.3d 792, 806-07 (9th Cir. 2003); <u>Thane Int'l v. Trek Bicycle Corp.</u>, 305 F.3d 894, 900-01 (9th Cir. 2002)

<u>**INSTRUCTION NO. 31**</u>

**TRADEMARK INFRINGEMENT – ELEMEN**

**TS AND BURDEN OF PROOF**

On Coach's claim for trademark infringement, Coach has the burden of proving each of the following elements by a preponderance of the evidence that:

1.    Coach's CC Mark is a valid, protectable trademark;

2.    Coach owns the CC Mark as a trademark; and

3.    Defendant used a mark similar to the CC Mark without the consent of Coach in a manner that is likely to cause confusion among ordinary consumers as to the source, affiliation, connection, or association of the goods.

I have already determined that the CC Mark is valid and that Coach owns the CC Mark as a trademark.  If you find that the third element on which Coach has the burden of proof has been proved, your verdict should be for Coach. If, on the other hand, Coach has failed to prove the third element, your verdict should be for Defendant.

<u>Authorities</u>:  9th Cir., 15.5

# **INSTRUCTION NO. 32**

**Intentionally left blank**

**INSTRUCTION NO. 33**

**TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – <u>SLEEKCRAFT</u> TEST**

You must consider whether Defendant's use of the accused marks is likely to cause confusion about the source, affiliation, connection, or association of Coach's or Defendant's goods.

I will suggest some factors you should consider in deciding this. The presence or absence of any particular factor that I suggest should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this.  Likelihood of confusion is not determined by mechanically counting the number of factors that weigh in favor of each party. As you consider the likelihood of confusion you should examine the following non-exclusive list of factors:

      (1)    Strength or Weakness of the CC Mark.

      (2)    Defendant's Use of the Mark.

      (3)    Similarity of the CC Mark and the marks used by Defendant.

      (4)    Actual Confusion.

      (5)    Defendant's Intent.

      (6)    Marketing/Advertising Channels.

      (7)    Consumer's Degree of Care.

I will now instruct you about how these factors should be applied to the factual determinations that you will make in this case.

Authorities: 9th Cir., 15.16; <u>AMF, Inc. v. Sleekcraft Boats,</u> 599 F.2d 341, 348-49 (9th Cir. 1979); <u>Entrepreneur Media, Inc. v. Smith,</u> 279 F.3d 1135, 1141 (9th Cir. 2002); <u>Mattel Inc. v. Walking Mountain Productions,</u> 353 F.3d 792,806-07 (9th Cir. 2003); <u>Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.,</u> 73 Or. App. 732, 737, 700 P.2d 677, 684 (1985).

# INSTRUCTION NO. 34

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – STRENGTH OF MARK

The first factor is the strength of the CC Mark.

The more the consuming public recognizes the CC Mark as an indication of the origin of Coach's goods, the more likely it is that consumers would be confused about the source, affiliation, connection, or association of Defendant's goods if Defendant uses a similar mark.

Strong marks receive the highest level of protection under the trademark laws. The fame of a mark plays an important role in determining the strength of a mark. A mark that is strong because of its fame or its uniqueness is more likely to be remembered and is more likely to be associated in the public mind with a greater breadth of products.

If you find that Coach's CC Mark has received extensive public recognition and renown, then they deserve and should receive more legal protection than an obscure or weak mark. To determine whether the CC Mark is strong, you may consider factors such as substantial sales of products bearing the CC Mark, long duration of commercial use of the CC Mark, popularity of the CC Mark, unsolicited media coverage of the CC Mark, significant advertising and extensive promotion of the CC Mark.

With respect to the strength of the CC Mark, I have already found that the CC Mark is strong and therefore deserving of the highest level of protection.

Authorities:  9th Cir., 15.16; <u>Century 21 Real Estate Corp. v. Sandlin</u>, 846 F.2d 1175, 1179 (9th Cir. 1988) ("Evidence of the strength of Century 21's mark includes the fact that it has expended several million dollars in advertising real estate services rendered in connection with the 'Century 21' mark, and that the mark has been used in connection with real estate sales in excess of one billion dollars."); <u>Nissan Motor Co. v. Nissan Computer Corp</u>., 89 F. Supp. 2d 1154, 1163 (C.D. Cal., 2000) (unsolicited media mention is evidence of strength); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 24:49 (4th ed. 2007).

## INSTRUCTION NO. 35

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF
## CONFUSION – FACTORS – USE OF MARK

The second factor is Defendant's use of the trademark.

If Defendant and Coach use their marks on the same, related, or complementary kinds of goods, there may be a greater likelihood of confusion about the source, affiliation, connection, or association of goods than otherwise.

When evaluating the nature of Defendant's use of the marks, it is not necessary for the parties' goods to be identical for there to be a likelihood of confusion. Goods are sufficiently similar under the likelihood of confusion analysis if they complement one another or are similar in use and function. Where goods are directly competitive, the degree of similarity of the marks needed to cause likely confusion is less than in the case of dissimilar goods. A small degree of similarity between two marks may lead to a finding that confusion is likely when the products are identical, inexpensive items. Moreover, when the parties' goods are identical, except perhaps for quality, a lower standard of similarity may be applied when comparing the two marks.

Authorities:  9th Cir., 15.16; Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1055 (9th Cir. 1999); E & J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992); Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1109-1110 n.9 (9th Cir. 1992); Beer Nuts, Inc. v. Clover Club Foods Co., 805 F.2d 920, 925 (10th Cir. 1986); St. Ives Labs., Inc. v. Nature's Own Labs., 529 F. Supp. 347, 350 (C.D. Cal. 1981); SquirtCo v. Seven-Up Co.,

628 F.2d 1087, 1091 (8th Cir. 1980); Restatement (Third) of Unfair Competition 3d, § 21, cmt. G, at 195-96; 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 24:22 (4th ed. 2006); Dec. 21, 2007 Opinion and Order (Doc. No. 662) at 28-29

## INSTRUCTION NO. 36

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – SIMILARITY OF THE MARKS

The third factor is the similarity of the trademarks.

If the overall impression created by Coach's CC Mark in the marketplace is similar in appearance to that created by the marks used by Defendant, there is a greater chance that consumers are likely to be confused by Defendant's use of the marks. Similarities in appearance weigh more heavily than differences in finding that the Coach and Defendant marks are similar.

You should compare similarities of design by considering the impression made by the marks as a whole, rather than simply comparing individual features. Trivial distinctions between two marks are not sufficient to avoid confusion. Slight differences in the sight, sound, or meaning of trademarks will not protect an infringer.

Authorities:  9th Cir., 15.16; AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 351-52 (9th Cir. 1979); GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1206-07 (9th Cir. 2000); Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1455 (9th Cir. 1991); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir. 1988); Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1144 (9th Cir. 2002); Exxon Corp. v. Texas Motor Exchange, Inc., 628 F.2d 500, 505 (5th Cir. 1980); Dec. 21, 2007 Opinion and Order (Doc. No. 662) at 25-28 (citing adidas-Salomon AG v. Target Corp., 228 F.Supp.2d 1192, 1211 (D. Or. 2002)).

## INSTRUCTION NO. 37

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – SIMILARITY OF MARKS – SIDE BY SIDE COMPARISON IS INAPPROPRIATE

In assessing similarity of the marks, a side-by-side comparison of the parties' products is not the test of likelihood of confusion. Instead, you should consider their similarity based on the way in which consumers and potential consumers will view the products both in the marketplace, and while they are being worn in public, because consumers often carry an imperfect recollection of one party's mark and later observe the other party's mark at some other time and place. Thus, you should not indulge in a prolonged and minute comparison of the conflicting marks in the peace and quiet of the courtroom, for this is not the context in which consumers or others are faced with them.

Authorities:  9th Cir., 15.16; Levi Strauss & Co. v. Blue Bell, Inc., 632 F2d 817, 822 (9th Cir. 1980); Mutual Ins. Co. v. Meridian Ins. Group Inc., 128 F.3d 1111, 1115 (7th Cir. 1997); James Burrough, Ltd. v. Sign of Beefeater, Inc., 540 F.2d 266, 275 (7th Cir. 1976); Payless Productsource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985 (Fed Cir. 1993); Dec. 21, 2007 Opinion and Order (Doc. No. 662) at 24-28

## INSTRUCTION NO. 38

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF
## CONFUSION – FACTORS – ACTUAL CONFUSION

The fourth factor is actual confusion.

If use by Defendant of a mark similar to Coach's CC Mark has led to instances of actual confusion, this strongly suggests a likelihood of confusion. However, actual confusion is not required for a finding of likelihood of confusion. Even if actual confusion has not occurred, Defendant's use of the similar trademark may still be likely to cause confusion.

Authorities:  9th Cir., 15.16; Lindy Pen Co., Inc. v. Bic Pen Corp., 796 F.2d 254, 256-57 (9th Cir. 1986) (finding likelihood of confusion and ordering injunction despite absence of evidence of actual confusion); Steinway & Sons v. Demars & Friends, 210 U.S.P.Q. 954 (C.D. Cal. 1981) ("Where there is evidence of actual confusion, it is regarded as 'extremely significant' to the issue of likelihood of confusion, and great weight is attached to it."); Brookfield Communications, Inc. v. West Coast Entertainment Corp., 174 F.3d 1036, 1050 (9th Cir. 1999); Dec. 21, 2007 Opinion and Order (Doc. No. 662) at 34-38

## INSTRUCTION NO. 39

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – DEFENDANT'S INTENT IN ADOPTING MARK

The fifth factor is Defendant's intent.

Bad faith or fraudulent intent is not required for trademark infringement. However, evidence of bad faith is evidence of a likelihood of confusion, because the law provides that when one party knowingly adopts a mark similar to another's, it is presumed that the defendant will accomplish its purpose of deceiving the public.

Knowing use by Defendant of Coach's trademark to identify similar goods may show an intent to derive benefit from the reputation of Coach, suggesting an intent to cause a likelihood of confusion.

If you find that Defendant attempted to obtain advantages from the good will associated with the use of Coach's CC Mark, you may treat this as strong evidence of a likelihood of confusion.

Authorities:  9th Cir., 15.16; Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1456 (9th Cir. 1991); AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir. 1979); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public."); Fleischmann Distilling Corp. v. Maier Brewing Co., 314

F.2d 149, 157-58 (9th Cir. 1963) ("[W]hen the evidence ... show[s] or require[s]
the inference that another's name was adopted deliberately with a view to obtain
some advantage from the good will, good name, and good trade which another has
built up, then the inference of likelihood of confusion is readily drawn."); 15
U.S.C. § 1072; Park 'N' Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 199-
200 (1985); Dec. 21, 2007 Opinion and Order (Doc. No. 662) at 33-34

## INSTRUCTION NO. 40

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF

## CONFUSION – FACTORS – SIMILARITY OF CHANNELS OF TRADE

The sixth factor is the parties' advertising and marketing channels.

If the goods manufactured by Coach and Defendant are likely to be sold in the same or similar stores or outlets, or advertised in similar media, this may increase the likelihood of confusion, even if the goods are sold at different prices and to consumers with different income levels.

Even if you find that the parties manufacture goods that are sold and advertised in completely different markets, this factor still may not favor Defendant if you find a likelihood of, or actual, post-sale confusion. This is because post-sale observers may be unaware that Defendant and Coach products are sold in different stores or at different prices, yet their confusion may still be detrimental to Coach.

Authorities:  9th Cir., 15.16; Payless Productsource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 989-90 (Fed Cir. 1993); YKK Corp. v. Jungwoo Zipper Co., Ltd., 213 F.Supp.2d 1195, 1205 (C.D. Cal. 2002); Phat Fashions, L.L.C. v. Phat Game Athletic Apparel, Inc., 2002 WL 570681, *9 (E.D. Cal. 2002); Laser Svcs., Inc. v. Deenin, 1993 WL 65666 (D. Or. 1993); Saks & Co. v. Hill, 843 F. Supp. 620, 623 (S.D. Cal. 1993); Death Tobacco, Inc. v. Black Death USA, 31U.S.P.Q.2d 1899, 1907 (C.D. Cal. 1993); JouJou Designs, Inc. v. JoJo Linge Int'l, Inc., 821 F. Supp. 1347, 1354 (N.D. Cal. 1992); St. Ives Labs., Inc. v. Nature's Own Labs., 529 F. Supp. 347, 353 (C.D. Cal. 1981)

## INSTRUCTION NO. 41

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – FACTORS – CONSUMER'S DEGREE OF CARE

The seventh factor is the consumer's degree of care.

For purposes of evaluating likelihood of confusion, you must consider whether a typical consumer exercising ordinary care would be confused by Defendant's products.

The more sophisticated the potential buyers of the goods or the more costly the goods, the more careful and discriminating the reasonably prudent consumer exercising ordinary caution may be. They may be less likely to be confused by similarities in Coach's and Defendant's trademarks.

On the other hand, relatively unsophisticated customers of inexpensive goods are less likely to take a great deal of care in distinguishing between goods before purchasing, and are more likely to be attracted to, and confused by, imitations of a particular mark.

Thus, if you find that Defendant's products would be viewed and purchased by all classes of consumers, you must take into account that there will be among them the ignorant, the inexperienced, and the gullible, among whom confusion is more prevalent.

Authorities:  9th Cir., 15.16; Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 155-56 (9th Cir. 1963); AMF, Inc. v. Sleekcraft Boats, 599 F.2d

341, 353 (9th Cir. 1979); <u>Steinway & Sons v. Demars & Friends</u>, 210 U.S.P.Q. 954
(C.D. Cal. 1981); <u>M'Otto Enters., Inc. v. Redsand, Inc.</u>, 831 F. Supp. 1491, 1502
(W.D. Wash. 1993); <u>Gucci America, Inc. v. Action Activewear, Inc.</u>, 759 F. Supp.
1060, 1066 (S.D.N.Y. 1991)

## INSTRUCTION NO. 42

## TRADEMARK INFRINGEMENT – ELEMENTS – LIKELIHOOD OF CONFUSION – CLOSE CASE RESOLVED IN FAVOR OF SENIOR USER

Trademark rights are based on priority of use. Therefore, the second comer has a duty to name and dress his products as to avoid all likelihood of consumers confusing it with the product of the first comer. Moreover, in a close case, amounting to a tie, doubts are resolved in favor of the senior user, Coach.

If you find that Defendant began selling key chains at issue after Coach began using the CC Mark, then, if Defendant was aware of the CC Mark, it had a duty to choose marks so as to avoid any likelihood of confusion with Coach.

Authorities:  Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 n. 14 (9th Cir. 1997); Lozano Enters. v. La Opinion Pub. Co., 44 U.S.P.Q.2d 1764, 1766-67 (C.D. Cal. 1997); L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117, 1132 (Fed. Cir. 1993) (noting the "duty of the second comer 'to so name and dress his product as to avoid all likelihood of consumers confusing it with the product of the first comer'") (citation omitted); Scientific Applications, Inc. v. Energy Conservation Corp., 436 F. Supp. 354, 359 (N.D. Ga. 1977) ("It has been held that a newcomer to a business bears a duty in selection of a service or trade name 'to keep far enough away to avoid all possible confusion'") (citation omitted); 4 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition, § 23:64 (4th ed. 2006).

## INSTRUCTION 43
## INTENTIONAL INFRINGEMENT (15 U.S.C. § 1117(b))

If you find that Defendant infringed Coach's trademark, you must also determine whether the defendant used the trademark intentionally, knowing it was an infringement.

Willfulness can be established by evidence of knowing conduct or by evidence that Defendant acted with "an aura of indifference to plaintiff's rights"-in other words, that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it.

Authorities:  9th Cir. 15.27; Autodesk, Inc. v. Flores, 2011 WL 337836 (N.D.Cal.,2011); Philip Morris USA Inc. v. Banh, 2005 U.S. Dist. LEXIS 43113, at *20 (C.D.Cal.2005); see also Louis Vuitton S.A. v. Lee, 875 F.2d 584, 590 (7th Cir.1989) ("[I]t is enough ... that the defendant failed to inquire ... because he was afraid of what the inquiry would yield."); Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F.2d 1472, 1476 (11th Cir.1991)

## INSTRUCTION NO. 44

## TRADEMARK INFRINGEMENT—ELEMENTS—LIKELIHOOD OF CONFUSION—TIMING OF CONFUSION

Confusion in the marketplace can occur at three (3) distinct times:

    (1)    Before the purchase ("initial-interest" confusion);

    (2)    At the moment of purchase ("point-of-sale" confusion); and

    (3)    After the purchase ("post-sale" confusion).

Likelihood of confusion is not limited to actual purchasers. The purpose of the trademark laws is to outlaw the use of trademarks which are likely to cause confusion, mistake, or deception of any kind, not merely of actual purchasers.

"Initial interest confusion" occurs when a defendant's use of confusing trademark initially attracts the consumer to the defendant, and this confusion may still be an infringement even if no sale is consummated as a result of the confusion.

The trademark law also protects against confusion on the part of someone other than the purchaser, occurring after the initial purchase. Post-sale confusion occurs when consumers view a product outside the context in which it is originally distributed and confuse it with another, similar product. Such confusion occurs, for example, when a consumer observes someone utilizing Defendant's accused products and believes that the products are Coach. As a consequence, the consumer may attribute any perceived inferior quality of Defendant's products to Coach, thus damaging Coach's reputation and image.

Authorities:  Brookfield Communications, Inc. v. West Coast Entertainment Corp.,
174 F.3d 1036, 1063-64 (9th Cir. 1999) (collecting cases); Academy of Motion
Picture Arts and Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1455
(9th Cir. 1991) (reversing trial court for failing to consider post-sale confusion);
Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 822 (9th Cir. 1980) (finding
that Defendant's label would cause a likelihood of confusion among "prospective
purchasers . . . who observe [Defendant's] projecting label after the point of sale");
Payless Productsource, Inc. v. Reebok Int'l, Ltd., 998 F.2d 985, 989-90 (Fed. Cir.
1993) (reversing district court's failure to issue preliminary injunction because
district court failed to consider extent of post - sale confusion)

**INSTRUCTION NO. 45**

**TRADEMARK INFRINGEMENT – COUNTERFEIT MARKS**

The Lanham Act defines a "counterfeit" as a spurious mark which is identical with, or substantially indistinguishable from, a registered mark. A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the genuine mark. Often, counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise.

While the Lanham Act's likelihood of confusion standard is predominantly factual in nature, the likelihood of confusion is presumed in a case where the defendant has manufactured, sold, or distributed counterfeit goods.

The key chains sold by Defendants are to be considered counterfeit if they bear marks either identical or nearly indistinguishable from the CC Mark as actually used by Coach in the marketplace, even if it is not the exact duplicate of the form of the mark as shown in CC Mark's federal registration,

Authorities:  15 U.S.C. § 1127; J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:10, 4th Ed. (2003); Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); Philip Morris U.S.A. Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); General Motors Corp. v. Autovation Technologies, Inc., 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004) ("a likelihood of

confusion is presumed when a defendant intentionally copies a trademark design");
<u>Pepe, Ltd. v. Ocean View Factory Outlet Corp</u>., 770 f. Supp. 754, 21 U.S.P.Q.2d
1509 (D.P.R. 1991)

## INSTRUCTION NO. 46

## UNFAIR COMPETITION; FALSE DESIGNATIONS OF ORIGIN

Coach has asserted a claim that falls under the category of claims known as "unfair competition." As you will see, this claim is very similar to a claim for trademark infringement.

Whether the violation is called infringement, unfair competition, or false designations of origin, the test is identical: "is there a likelihood of confusion?" Accordingly, in considering Plaintiffs' unfair competition claims, you are to apply the same multi-factor test for likelihood of confusion described earlier for trademark infringement.

Defendant is liable for unfair competition if (1) its products are likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Coach, or (2) its products are likely to cause confusion, to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant's goods by Coach.

Authorities: New West Corp. v. NYM Co. of California, Inc., 595 F.2d 1194, 1201 (9th Cir.1997); Classic Instruments, Inc. v. VDO-Argo Instruments, Inc., 73 Or. App. 732, 737, 700 P.2d 677, 684 (1985); Westinghouse Electric v. General Circuit Breaker, 41 USPQ2d 1741 (9th Cir. 1997).

## INSTRUCTION NO. 47
## TRADEMARK DILUTION

Coach has asserted claims for trademark dilution under Federal law.

Under Federal law, trademark dilution is the lessening of the capacity of a famous or well-known or distinctive mark or trade dress to identify and distinguish goods or services.  The purpose of the anti-dilution laws is to protect against the erosion of the trademark's value, or the tarnishment of the trademark's image.

In order to prove a violation, a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment.

Federal law does not require a showing of competition or likelihood of confusion to succeed on a dilution claim.

Authorities:  15 U.S.C.  § 1125(c); Cal. Bus. & Prof. Code § 14330; Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1324 (9th Cir., 1998); Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1011 (9th Cir., 2004)

## INSTRUCTION NO. 48

## TRADEMARK DILUTION – WHAT IS A "FAMOUS" MARK?

A mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:

(1)      The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.

(2)      The amount, volume, and geographic extent of sales of goods or services offered under the mark.

(3)      The extent of actual recognition of the mark.

(4)      Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

Authorities:  15 U.S.C.  § 1125(c)(2)(A)

**INSTRUCTION NO. 49**

**TRADEMARK DILUTION – BLURRING & TARNISHMENT**

Trademark Dilution can occur in two ways: Blurring and Tarnishment.

Dilution by blurring is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark. In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:

> (1)    The degree of similarity between the mark or trade name and the famous mark.

> (2)    The degree of inherent or acquired distinctiveness of the famous mark.

> (3)    The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

> (4)    The degree of recognition of the famous mark.

> (5)    Whether the user of the mark or trade name intended to create an association with the famous mark.

> (6)    Any actual association between the mark or trade name and the famous mark.

Dilution by tarnishment is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

If Coach proves dilution either by blurring or by tarnishment, then you should find for Coach.  Coach is not required to prove dilution both by blurring and by tarnishment.

Authorities:  15 U.S.C. § 1125(c)(2)

## <u>INSTRUCTION NO. 50</u>

## TRADEMARK INFRINGEMENT DAMAGES

If you find for Coach on its federal trademark infringement or unfair competition claims, you may award Plaintiffs:

      (1)     Actual Damages

      (2)     Coach's profits; and

      (3)     Attorney's fees

I will instruct you as to the requirements for each award and provide guidance as to how to calculate those awards.

<u>Authorities</u>: 15 U.S.C. § 1117(a).

## INSTRUCTION NO. 51

## TRADEMARK INFRINGEMENT DAMAGES – PLAINTIFF'S ACTUAL DAMAGES

If you find for the Coach on the Coach's trademark infringement and unfair competition claims, you must determine the plaintiff's actual damages.

Coach has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Coach for any injury and or property damage you find was caused by Defendant's infringement of Coach's registered trademark.  It is not necessary for Coach to prove that Defendant acted willfully in order to recover damages

In determining Coach's actual damages, you should consider the following:

      (4)    The injury to Coach's reputation;

      (5)    The injury to Coach's goodwill, including injury to Coach's general business reputation;

      (6)    Whether the evidence would support a reasonable royalty;

      (7)    The lost profits that the plaintiff would have earned but for the defendant's infringement. Profit is determined by deducting all expenses from gross revenue;

      (8)    The expense of preventing customers from being deceived;

      (9)    The cost of future corrective advertising reasonably required to correct any public confusion caused by the infringement;

      (10)   Any other factors that bear on plaintiff's actual damages.

Authorities:  9th Cir., 15.25; 15 U.S.C. § 1117; <u>Maier Brewing Co. v. Fleischmann</u> <u>Distilling Corp.</u>, 390 F.2d 117 (9th Cir. 1968); <u>Intel Corp. v. Terabyte Int'l, Inc.</u>, 6 F.3d 614, 621 (9th Cir. 1993); <u>Lindy Pen Co. v. Bic Pen Corp.</u>, 982 F.2d 1400, 1407 (9th Cir. 1993); <u>Brooks Bros. v. Brooks Clothing of California, Ltd.</u>, 60 F. Supp. 442 (S.D. Cal. 1945), aff'd, 1548 F.2d 798 (9th Cir. 1947); <u>Starr v.</u> <u>Hotelling</u>, 168 Or. 207 (1942).

# INSTRUCTION NO. 52

## TRADEMARK INFRINGEMENT DAMAGES-DEFENDANT'S PROFITS
## (15 U.S.C. § 1117(A))

Coach is entitled to any profits earned by Defendant that are attributable to the infringement, which Coach proves by a preponderance of the evidence.

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of Defendant's receipts from using the trademark in the sale of a product. Plaintiff has the burden of proving Defendant's gross revenue by a preponderance of the evidence.

Expenses are all operating and production costs incurred in producing the gross revenue. The defendant has the burden of proving the expenses and the portion of the profit attributable to factors other than use of the infringed trademark by a preponderance of the evidence.

Unless you find that a portion of the profit from the sale of the goods using the mark is attributable to factors other than use of the trademark, you shall find that the total profit is attributable to the infringement.

Authorities:  9th Cir. 15.26

# INSTRUCTION NO. 53

## TRADEMARK INFRINGEMENT DAMAGES-DEFENDANT'S PROFITS – WILLFULNESS
## (15 U.S.C. § 1117(A))

In order for Coach to be entitled to recover Defendant's profits from the sales of the infringing key chains, Coach has the burden of proving by a preponderance of the evidence that Defendant acting willfully or in bad faith when it infringed the CC Mark, or when Defendant engaged in unfair competition with respect to the CC Mark.

If you find the Defendant sold its infringing key chains despite notice of Plaintiff's CC Mark, or that Defendant's conduct occurred with knowledge that its actions constituted infringement, then you may find that Defendant acted willfully or in bad faith.

Authorities:  *Official Airline Guides, Inc. v. Goss*, F.3d 1385, 1394 (9th Cir. 1993); *Fleischmann Distilling Corp. v. Maier Brewing Co*., 314 F.2d 149, 157-58 (9th Cir. 1963); *Discovery Communications, Inc. v. Animal Planet, Inc.*, 172 F.Supp.2d 1282, 1292 (C.D. Cal. 2001)

# INSTRUCTION NO. 54

## TRADEMARK COUNTERFEITING – STATUTORY DAMAGES

If you find that the marks/designs on Defendant's products are counterfeit reproductions of Coach's CC Mark, then Coach is entitled to an award of statutory damages under federal law as an alternative to actual damages.

In a case involving a counterfeit mark, Coach is entitled to statutory damages in the amount of not less than $1,000.00 or more than $200,000.00 per counterfeit mark per type of goods or services sold, offered for sale, or distributed by Defendant.

If Defendant's infringement was willful, then Plaintiff is entitled to up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed by Defendant.

Authorities:  15 U.S.C. § 1117(c); 15 U.S.C. § 1127

## INSTRUCTION NO. 55

### TRADEMARK DILUTION-DAMAGES-WILLFULLNESS

In order for Coach to be entitled to recover actual damages or Defendant's profits on Coach's dilution claims under Federal law, Coach must prove by a preponderance of the evidence that Defendant willfully intended to trade on Coach's reputation or to cause dilution to the CC Mark.

Authorities:  15 U.S.C. § 1125

## INSTRUCTION NO. 56

### TRADEMARK DILUTION-DAMAGES-ACTUAL DAMAGES

If you find for Coach on its dilution claim under Federal law, and you find that Defendant acted willfully, then Coach may be entitled to damages.

Coach has the burden of proving actual damages by a preponderance of the evidence. Damages means the amount of money which will reasonably and fairly compensate Coach for any injury you find was caused by Defendant's dilution of Coach's CC Mark.

In determining Coach's actual damages, you should consider the following:

      (1)    The injury to Coach's reputation;

      (2)    The injury to Coach's goodwill, including injury to Coach's general business reputation; and

      (3)    Whether the evidence would support a reasonable royalty.

Authorities: 15 U.S.C. § 1117; *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117 (9th. Cir. 1968); *Intel Corp v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993); *Lindy Pen Co. v. Bic Pen Corp*., 982 F.2d 1400, 1407-11 (9th Cir. 1993); 5 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition*, §§ 30:74-75 (4th ed. 2007).

## <u>INSTRUCTION NO. 57</u>

## TRADEMARK DILUTION-DAMAGES-DEFENDANT'S PROFITS

If you find for Coach on its dilution claim under Federal law, and you find that
Defendant acted willfully, then Coach is entitled to any profits earned by
Defendant that are attributable to Defendant's dilution.  I have already instructed
you on the proper calculation of Defendant's profits and the parties' respective
burdens.

<u>Authorities</u>:  15 U.S.C. § 1117; *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400,
1405-08 (9th Cir. 1993)

## INSTRUCTION NO. 58

**Intentionally left blank**

## INSTRUCTION NO. 59
## DAMAGES – PUNITIVE DAMAGES

If you award monetary recovery to Coach on its trademark infringement, trademark dilution, or unfair competition claims, you must also determine whether Coach is entitled to punitive damages.  Coach is entitled to punitive damages only if it proves that Defendant acted with malice or in willful, wanton, or reckless disregard for the rights of Coach, or if deterrence is called for and Defendant's conduct is particularly aggravated.

You must find these facts by clear and convincing evidence.  Clear and convincing evidence means that the truth of the asserted evidence is highly probable.

Authorities:  O.R.S. § 31.730; *Thompson v. Federico*, 324 F.Supp2d 1152, 1170 (D. Or. 2004); *Clausen v. M/V NEW CARISSA*, 171 F.Supp.2d 1127, 1131 (D. Or. 2001), *aff'd*, 339 F.3d 1049 (9th Cir. 2003); *American Republic Ins. Co. v. Union Fidelity Life Ins. Co.*, 470 F.2d 820, 826 (9th Cir. 1972)