**Donald A. Bick** (OSB 60011)
dabick@aol.com
**DONALD A. BICK, PC**
1238 Throne Drive
Eugene, OR 97402-7420
Telephone: (541) 654-0836
Facsimile: (877) 216-0083
Attorney for Defendants

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **COACH, INC.,** *a Maryland Corporation;* **COACH SERVICES, INC.,** *a Maryland Corporation,*<br><br>Plaintiffs,<br><br>v.<br><br>*SISKIYOU BUCKLE CO., INC.,* an *Oregon Corporation dba SISKIYOU GIFTS; DOES 1-10,* inclusive,<br><br>Defendants. | *CASE NO: 3:11-cv-00486-HZ*<br><br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS RENEWEDMOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50 AND ALTERNATIVE MOTION FOR NEW TRIAL UNDER FRCP-59** |

# TABLE OF CONTENTS

Memorandum Heading……………………………………………………..    1

   Legal Standards……………………………………………    2

   Rule 50 Motion……………………………………………    2

  1. **Request for reconsideration of the opinion of the Court with respect to 15 U.S.C. §1111**………………………………..…………………  2

    A. First reason for reconsideration    ………………………… 3
    B. In the same opinion, (page 4) the Court said *"Defendant does not dispute the content of Mr. Lau's testimony, only the interpretation of the requirements of §1111"*…..………………………………………    3
    C. The court's opinion did not deal with the key issue of whether it is necessary under §1111 for the notice of registration to be "with" the trademark in order to satisfy the terms of the statute…………………    4
    D. The Court apparently took the position asserted by Mr. Blakely, that the word "with" in 15 U.S.C. §1111 was superfluous…………………………    5
    E. Defendant did not have a transcript when it filed the previous motion with respect to the third and fifth claims for relief………………………    5

  2. **Defendant filed a written rule 50 motion at the conclusion of the case in chief of Plaintiff and further argued the motion in open court**…………..    5

    What pages 189-190 of the transcript show………………………    5, 6, 7

  3. **There is no evidence sufficient to show compliance by Coach with the provisions of 15 U.S.C. 1111 (Section 29 of Lanham Act)**………………    7

    What pages 189-190 of the transcript show………………………    5, 6, 7

  4. **Defendant's profits may be used for determining an award under 15 U.S.C §1117(a) only when the trademark infringement was willful**……..    12

  5. **Plaintiffs' evidence did not provide substantial evidence of confusion so as to allow a reasonable jury to find for them**…………………………..    13

  6. **The Court May Set Aside or Reduce the Jury's Damages Award Because it is Erroneous and Contrary to the Clear Weight of the Evidence**……………    18

**MEMORANDUM WITH RESPECT TO ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FRCP 59**

   Legal Standard ……………………………………………………..    24

New Trial..................................................................................... 25

Argument.................................................................................... 26

1. **The jury award was based only on speculation or guesswork and not supported by the evidence** ...................................................................... 27

2. **Under 15 U.S.C. § 117(a) the Court must determine the final award, not the Jury**.......................................................................................  27

3. **Based upon equitable principles the award must be either nothing, or at least reduced**.....................................................................................  28

4. **Defendant has not yet had the opportunity to present evidence concerning the equitable matters the court should consider in arriving at an award**......................................................................................  29

5. **Trademark Bullying**......................................................................  30

# Table of Authorities

## Cases Cited

*Adidas* Case…………………………………………………………… 1,13,14, 16,17,25

*Mockler v. Multnomah County.* 140 F.3d 808, 815 n.8 (9th Cir. 1998)……………… 2

*Johnson v. Paradise Valley Unified School Dist..* 251 F.3d 1222, 1227 (9th Cir.), cert, denied 534 U.S. 1055 (2001)……………………………………………….. 2

*Reeves v. Sanderson Plumbing Prods. Inc..* 530 U.S. 133, 150 (2000)*: see also Johnson.* 251 F.3d at 1227……………………………………………………….. 2

*Coach, Inc. v. Asia Pacific Trading Co.*, 676 F. supp. 2d 914 (Dist. Court, CD California, 2009)…………………………………………………………… 3,7,8,11,12

Article by James Juo in The John Marshall Review of Intellectual Property Law, Volume 10, Issue 4, Summer of 2011……………………………………… 7

*Kransco  Manufacturing Inc, v. Hayes Specialties Corp,* 37 USPQ 2d 1722, (Fed. Cir. 1996)………………………………………………………….. 7

*International Stamp Art, Inc. v. U.S. Postal Service*, 456 F 3d 1270 (llth Cir. 2006)…………………………………………………………………...... 7,11

McCarthy on Trademarks and Unfair Competition § 19:144(4th ed.)………….. 7,8

*Adray v. Adry-Mart, Inc.* 76 F. 3d 984, 988 (9th Cir. 1995)…………………… 12

*CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058,1065 (D.Or.2007)…………… 12

*Bell v. Clackamus County,* 341 F. 3d 858, 865, (9th Cir. 2003)……………….. 13

*Murray v. Laborer Union, Local No. 324,* 55 F. 3d `490, 1495 (9th Cir. 1994)… 13

9th Circuit Model Instruction # 5.5……………………………………………… 13

Sleekcraft Case………………………………………………………………… 14

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 94 F.3d 376, 382 (7th Cir.1996) (quoting *Nike, Inc. v. JustDid It Enters.,* 6 F.3d 1225, 1229 (7th Cir. 993)……………… 14,15, 18

*Libman and Dorr Oliver*……………………………………………………….. 18

i

*Reebok Intl. Ltd. v. K-Mart Corp.*, 849 F. Supp. 252,272-73 (S.D.N.Y. 1994),
vacated pursuant to consent judgment, 1994 WL 733616 (S.D.N.Y.).............. 14

*Edge Wireless, LLC, v U.S.Cellular, 03-1362-AA*.................................... 15

*Sportvision, Inc. v. Sportsmedia Technology Corp.*, 2005 WL 1869350, at *10
(N.D. al.)............................................................................................ 15

*Libman Co. v. Vining Industries, Inc.*, 69 F.3d1360,1364 (7th Cir. 1995)...... 15, 23

*Pioneer Leimel Fabrics, Inc. v. Paul Rothman Industries*, 25 U.S.P.Q.2d 1096,
1107 (E.D. Pa.1992)............................................................................ 16

*Checkpoint Sys., Inc. v. Checkpoint Software Techs., Inc.*, 269 F.3d 270,297
(3d Cir. 2001)..................................................................................... 17

*Dorr-Oliver v. Fluid-Quip, Inc.*, 94 F.3d 386 at 383-84 (7th Circuit 1996)..... 18

*Libman* 69 F.3d at 363........................................................................ 18

*Shimko v. Guenther*, 505 F. 3d 987, 993 (9th Cir. 2007)............................. 19

*U.S. v. Kellington*, 217 F. 3d 1084, 1095 (9th Cir. 2000)........................... 19

*M2 Software, Inc v. Viacom,* Inc., 223 Fed. Appx. 653,655 (9th Cir. 2007: *Lindy
Pen*, 982 F. 2d at 1407......................................................................... 19,22

*Lindy Pen Co., Inc.v. Bic Pen Corp.*, 982 F.2d 1400,1407 (9th Cir. 1993)........ 22

*Aktiebolaget Electrolux v. Armatron Intern., Inc.*, 999 F.2d at 5 (1st Cir. 1993);
see *EckelIndus., Inc. v. Primary Bank*, 26 F. Supp. 2d 313, 317 (D.N.H. 1998)... 22

*Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp.*, 779 F.2d 6, 12
(1st Cir 1986)..................................................................................... 22

*Lindy Pen Co.*, 982 F. 2d at 1410........................................................... 22

*Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197,210 (9th Cir. 1989)... 22

*Trovan, Ltd. v. Pfizer*, Inc., Case No. CV-98-00094 LGB MCX, 2000 WL
709149, *8 (CD. Cal. May 24, 2000)....................................................... 23

*Invicta Plastics (USA) Ltd v. Mego Corp.*, 523 F. Supp. 619, 624 (S.D.N.Y.
1981)................................................................................................. 23

*McClaran v. Plastic Industries, Inc.*, 97 F.3d 361 (9th Cir. 1996)................... 23

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir. 1996)............ 23

*Libman Co. v. Vining Industries,* Inc., 69 F.3d 1360, 1364 (7th Cir. 1995)........ 24

*Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005)...... 24

*Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir.1991)......... 24

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 552-53
(6th Cir. 2005).................................................................................... 24

Silver Sage Partners v. City of Desert Hot Springs. 251 F.3d 814, 819 (9th Cir.
2001)................................................................................................ 25

Molski v. M.J. Cable. Inc.. 481 F.3d 724, 729 (9th Cir. 2007)...................... 25

United States v. 99.66 Acres of Land 970 F.2d 651, 658 (9th Cir. 1992)......... 25

Digidvne Corp. v. Data Gen. Corp.. 734 F.2d 1336,1347 (9th Cir. 1984)
(internal quotation and citation omitted), cert, denied. 473 U.S. 908 (1985)..... 25

Silver Sage Partners. 251 F.3d at 819................................................... 25,26

Landes Constr. Co.. Inc. v. Royal Bank of Canada. 833 F.2d 1365, 1372 (9th
Cir. 1987).......................................................................................... 25

United States v. Kellington. 217 F.3d 1084, 1095 (9th Cir. 2000)................. 26

Pershing Park Villas v. United Pacific Ins.. 219 F.3d 895,905 (9th Cir. 2000)... 26

Los Angeles Mem'l Coliseum Comm'n v. NFL. 791 F.2d 1356, 1360 (9th Cir.
1986), cert, denied. 484 U.S. 826 (1987).............................................. 26

Seymour v. Summa Vista Cinema. Inc.. 809 F.2d 1385, 1387 (9th Cir.), opinion
amended on other grounds. 817 F.2d 609 (9th Cir. 1987)........................... 26

Silver Sage Partners. 251 F.3d at 818................................................... 26

D & A Redi-Mix v. Sierra Redi-Mix & Contracting Co.. 692 F.2d 1245, 1249
(9th Cir. 1982)................................................................................... 26

*Los Angeles Mem'l Coliseum Comm'n v. NFL.* 791 F.2d 1356, 1360 (9th Cir.
1986), cert, denied. 484 U.S. 826 (1987).............................................. 27

iii

*Go Medical Industries  PTY, LTD. and Alexander G.B. O'Neil v. Inmed
Corporation, and Alpine Medical, Inc,* 471 F. 3d 1264, (Fed Cir, 2006)……….. 28

*Adray* case and the C*ollegeNET*…………………………………………………… 29

**Donald A. Bick** (OSB 60011)
dabick@aol.com
**DONALD A. BICK, PC**
1238 Throne Drive
Eugene, OR 97402-7420
Telephone: (541) 654-0836
Facsimile: (877) 216-0083
Attorney for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **COACH, INC.,** *a Maryland Corporation;* **COACH SERVICES, INC.,** *a Maryland Corporation,*<br><br>    *Plaintiffs,*<br><br>v.<br><br>    *SISKIYOU BUCKLE CO., INC., an Oregon Corporation dba SISKIYOU GIFTS; DOES 1-10, inclusive,*<br><br>        *Defendants.* | *CASE NO: 3:11-cv-00486-HZ*<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS RENEWEDMOTION FOR JUDGMENT AS A MATTER OF LAW UNDER FRCP 50 AND ALTERNATIVE MOTION FOR NEW TRIAL UNDER FRCP-59** |

Pursuant to FRCP 50, Defendant has filed a renewed motion for a judgment as a matter of law under FRCP 50 and an alternative motion for a new trial and remitter under FRCP 59. This memorandum is in support thereof.

The following analysis of legal standards for the FRCP 50 renewed motion and the FRCP 59 Motion for a New Trial is largely extracted from the Opinion of Judge King in the A*didas* case. That case, in this court, is a similar case involving trademark infringement and post and pre-sale confusion so much of what is said is applicable here.

## LEGAL STANDARDS

I.    <u>Rule 50(b)-Judgment as a Matter of Law</u>

Under Federal Rule of Civil Procedure 50(b), the court may set aside the jury's verdict and enter judgment as a matter of law, if there is "no legally sufficient evidentiary basis for a reasonable jury to find" for Plaintiff on an issue or claim. "Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the non-moving party, allows only one reasonable conclusion and that conclusion is contrary to that reached by the jury." *Mockler v. Multnomah County.* 140 F.3d 808, 815 n.8 (9th Cir. 1998).

A motion for judgment as a matter of law must be denied, and the jury's verdict must be upheld, if the verdict is supported by substantial evidence. *Johnson v. Paradise Valley Unified School Dist..* 251 F.3d 1222, 1227 (9th Cir.), <u>cert, denied</u> 534 U.S. 1055 (2001). "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." Id. When evaluating a motion for judgment as a matter of law under Rule 50, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc..* 530 U.S. 133, 150 (2000*): see also Johnson.* 251 F.3d at 1227 ("although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.").

## RULE 50 MOTION

## 1.    <u>Request for reconsideration of the opinion of the Court with respect to 15 U.S.C §1111.</u>

Defendant is cognizant of the fact that the Court ruled recently ruled with respect to Defendant's Rule 50 Motion regarding the third claim for relief,  holding that there was a

sufficient showing of compliance with 15 U.S.C. 1111 by Coach. Defendant would request the

court to reconsider for the reasons hereafter set forth and consider this matter anew.

      A.  One of the reasons for the court's ruling was as follows:

   *"Defendant argues that notice of registration must be displayed with the trademark on the*

*product..."* (Opinion Page 4) <u>That is simply not accurate</u>.  In its memo in reply to Plaintiff's

response Defendant said: (Document 104, p. 3)


   **" <u>4. Siskiyou is not arguing, nor did it ever argue that the registration methods of §</u>**
**<u>1111 required the registration sign on the product itself, though that is often done.</u>**

   The statute, as clearly set forth in Defendant's memo, clearly requires that one of the methods
of notifying the public of the registration of the mark has to be used "with the mark". It does not
require it "on" the product. The obvious purpose of the statute is so the public can see the mark
and know that certain mark is registered. In this case, as in the Asia Pacific *case,* Coach simply
said they had a registered mark without showing the mark "with" one of the methods of showing
registration set for in the statute."

      B.  In the same opinion, (page 4) the Court said *"Defendant does not dispute the content*

       *of Mr. Lau's testimony, only the interpretation of the requirements of §1111".*  That

       statement is again inaccurate. Defendant's memo in support of its motion for

       judgment with respect to the third claim for relief clearly stated that the testimony of

       Mr. Lau was wrong as shown by Plaintiff's own evidence. In that memo, page 4 & 5,

       Defendant said:

   "Mr. Lau testified that the mark was advertised in the annual reports offered into evidence,
the catalogs, and the 10-Ks filed. (The Exhibits listed above.) In fact, the Exhibits described by
Mr. Lau do not show the mark in connection with one of the methods of showing registration
under Section 1111, but rather say as follows: (Exhibit 9, the 2009 annual report, page 9 under
the heading "TRADEMARKS AND PATENTS)

   *"TRADEMARKS AND PATENTS*
Coach owns all of the material trademark rights used in connection with the production,
marketing and distribution of all of its products, both in the U.S. and in other countries in which
the products are principally sold Coach also owns and maintains worldwide registrations for

trademarks in all relevant classes of products in each of the countries in which Coach products are sold. Major trademarks include *Coach, Coach and lozenge design, Coach and tag design, Signature C design, Coach Op Art design and The Heritage Logo (Coach Leatherware Est.1941)*. (italics in original) Coach is not dependent on any one particular trademark or design patent although Coach believes that the Coach name is important for its business. In addition, several of Coach's products are covered by design patents or patent applications. Coach aggressively polices its trademarks and trade dress, and pursues infringers both domestically and internationally. It also pursues counterfeiters domestically and internationally through leads generated internally, as well as through its network of investigators, the Coach hotline and business partners around the world.

    Coach expects that its material trademarks will remain in existence for as long as Coach continues to use and renew them. Coach has no material patents."

    There is clearly no way a member of the public, and this Defendant in particular, can ascertain the mark we are here concerned with and identify it as a registered Coach mark from the foregoing. It does not display the trademark with any one of the statutory prerequisites showing registration. **The testimony of Mr. Lau was just flat wrong."** (bold emphasis supplied)

    In that same memorandum (p. 4) Defendant further not only said the testimony of Mr. Lau was wrong, but invited the Court to review the Plaintiff's own exhibits and the website which Mr. Lau testified had a disclosure of the logo with the registration mark to see that his testimony was totally wrong. (memo, supra, page 4)

C.  The court's opinion did not deal with the key issue of whether it is necessary under §1111 for the notice of registration to be "with" the trademark in order to satisfy the terms of the statute. It is apparent from Plaintiff's own evidence that not only was Mr. Lau wrong, but it is clear that the trademarks were mentioned, but not "with" or in any way connected with the trademark itself.  Mr. Lau testified, (Tr-69) that the line 10 of Exhibit 6 shows the logo with the registration but that is simply not true.  He testified (Tr-68) the same with respect to Exhibit 17, which is likewise not true. He said the same about the website (Tr-67) which is also not true. In argument Mr. Blakely made the statement to the jury that the signature C trademark was registered  and said that was all that was needed, (Tr-294) similar to what he

told the court in the colloquy hereafter set forth where he said it was not necessary to have

the statement of registration "with" the depiction of the trademark. (Tr-190) That assertion by

Mr. Blakely is just not an accurate portrayal of the law.

D.  The Court apparently took the position asserted by Mr. Blakely, that the word "with" in 15

U.S.C. §1111 was superfluous, because instruction number 15 instructed the jury to that

effect, saying only that it was necessary for them to find the existence of one of the

registration methods in that statute, but did not require them to find that the registration

notice was "with" the trademark.

E.  Defendant did not have a transcript when it filed the previous motion with respect to the

third and fifth claims for relief and thus did not brief some of the matters disclosed by the

transcript in that motion.

It is apparent from the transcript later filed herein that Coach's position was <u>that it was</u>

<u>not necessary</u> that the registration notice be "with" the trademark. (Tr- 189-190)  Coach did

not maintain that its evidence displayed the trademark with the statements of registration

contained in its own evidence. Coach's only evidence was that the website, the catalogs, and

the other evidence stated that the "signature C design" trademark was registered, with no

showing of the trademark being near, adjacent, or used in conjunction with the trademark

description so as to satisfy the term "with" contained in§ 1111.

**2.  <u>Defendant filed a written rule 50 motion at the conclusion of the case in chief of Plaintiff</u>**
    **<u>and further argued the motion in open court.</u>**

This motion is a renewal of that motion pursuant to FRCP 50. The oral argument on
said motion is transcribed in pages 175-194. Noteworthy in the recorded arguments is the
following section of the transcript:

189

Proceedings - 6/5/12

As far as -- would you like me to put this on the Elmo, so we're all on the same page?

THE COURT: Sure. That's fine.

MR. BLAKELY: Exhibit No. 10. By the way, the statute doesn't say it needs to be next to the logo. If Congress meant it to mean it has to be next to the logo, Congress would have said that. Do I need to hit an Elmo --

DEPUTY COURTROOM CLERK: I did it for you.

MR. BLAKELY: You can see it right down the side of the catalog, Your Honor. Zoom into it. We can follow along.

It's a 2008 catalog. Coach, the Coach tag, the Coach lozenge, and the Coach signature C design are registered trademarks of Coach.

It's all on the catalogs, Your Honor. I read it. It's in the annual reports, which is the document that was filed by Coach to tell the world what Coach is doing and what Coach -- Coach's trademarks are. It is --

THE COURT: I think you just have a difference about what the law requires. I mean, what I think the defense is saying is you have to display the signature Cs, the eight Cs together, and right next to it somewhere it has to say, "This is what we're talking about. This is the registered trademark." And you're saying, "No you

190

Proceedings - 6/5/12

don't. You just have to say signature Cs are a registered trademark."

MR. BLAKELY: Right. And, Your Honor, there's a reason why there's not a single case or authority where defendant cites in support of that proposition. It's not the law.

THE COURT: Next."

After the oral argument discussed above, the Court denied Defendants Rule 50 motion and the trial resumed. This motion is thus a renewal thereof as required by the Rule.

3. **There is no evidence sufficient to show compliance by Coach with the provisions of 15 U.S.C. 1111 (Section 29 of Lanham Act)**

What pages 189-190 of the transcript show is the basic difference between what Coach contends is the meaning of §1111 and what Defendant views to be the proper construction of that statute. The court got to the essential difference between the contentions of the parties in the colloquy at the bottom of page 189 and the top of page 190. Mr. Blakely made it clear that his position was that all Coach had to do was mention that Coach had a registered trademark called a "signature C design" and there was no need to have the logo set forth with that statement, saying if Congress had meant that it would have said that. He ignores the fact that Congress did in fact say the logo or trademark had to be "with" the registration designation, obviously so the public could see the particular trademark which was registered and abide by that registration.

Mr. Blakely further said that there is not a single case or authority requiring the logo or trademark be shown with the registration statement. (Tr-190, lines 3-4) That is not true. There are not only cases, but treatises like McCarthy on Trademarks. See also the article by James Juo in The John Marshall Review of Intellectual Property Law, Volume 10, Issue 4, Summer of 2011.

While not binding on this court, the case *of Kransco Manufacturing Inc, v. Hayes Specialties Corp,* 37 USPQ 2d 1722, (Fed. Cir. 1996), upholds Defendants position, as, by inference does *International Stamp Art, Inc. v. U.S. Postal Service,* 456 F 3d 1270 (llth Cir. 2006) By implication so does the *Asia Pacific* case cited already many times, as there would

have been no such decision if in fact Coach's position was correct because the court in the *Asia Pacific* case had no different facts than here. If evidence that the "signature C design " trademark was a registered trademark whether or not "with" was sufficient without the trademark being set forth "with" that statement, then it would have been sufficient in the *Asia Pacific* case as well, and the court clearly held otherwise. The evidence is clear the catalogs, 10-Ks and other evidence offered by Coach here antedated the date of the *Asia Pacific* case. Similar cases where actual notice was discussed would not have had to have been discussed if Mr. Blakely's view of the statute were correct.

3 McCarthy on Trademarks and Unfair Competition § 19:144(4th ed.) states as follows:

"This section of the Act (§1111) unequivocally states that in order to recover profits or money damages in and infringement suit, the trademark registrant must give "notice" of his registration either by:

A. Printing one form of the "statutory notice" **near** the mark as actually used." (emphasis supplied)

There is simply no evidence to support the jury finding that Defendant had notice of the alleged trademark registration actually or by constructive notice under a proper construction of § 1111. Coach does not even contend that it set forth the trademark "with" the statement of registration and the evidence clearly shows it did not.

In its' original FRCP 50 Motion with respect to the claims of Plaintiffs under the Lanham Act, Defendant made the argument that because the undisputed evidence was that Defendant had no actual notice of the registered trademark of Coach, and Plaintiffs did not properly comply with 15. U.S.C. §1111 Coach was not entitled to damages unless and until the Defendant sold any allegedly infringing products after actual notice. The court apparently believed there was a

genuine issue of fact with respect to the issue of whether Coach conformed with the provisions of §1111..

There is no longer any issue of fact with respect thereto.  Mr. Lau for Plaintiff testified that Coach was strong, and well known, but did not testify that the particular Coach mark was both registered and that the fact of the registration was listed "with" the mark as 15 U.S.C.§ 1111 requires in order for there to be statutory notice.

The law is clear the statutory indicia of registration must be displayed *with the trademark* before any trademark will give constructive notice of the registration. That statutory requirement is obviously so that the public can see the trademark and know that trademark is registered.

The evidence offered and received shows that they only said that Coach had registered trademarks, *not showing the registered mark and with that mark stating that it was registered in one of the statutory ways.*  Counsel for Defendant has examined each and every exhibit offered by Coach at any time, not just the revised exhibits cut down in size at the request of the Court, and cannot find any examples of the trademark alleged being shown, much less "with " any of the methods of registration notice provided for in Section 1111. The Court is invited to do the same. The exhibits of Coach to review are 6,7,8,9,10,11,12,16,17,18,19,20, as per the exhibit list filed by Plaintiff as document #79.

Mr. Lau testified that the signature C design mark was set forth as being registered in the annual reports offered into evidence, the catalogs, and the 10-Ks filed. (the exhibits listed above.) He did not testify that the registration notice was "with" the trademark.  In fact Mr. Lau specifically testified Exhibit 17 stated the registration of the signature C design mark,(Tr-69) An examination of that Exhibit shows that is not true. Certainly that exhibit does not show the mark in connection with one of the methods of showing registration under Section 1111. An example

of what is said in the items of evidence offered by Coach evidence  is Exhibit 9, the 2009 annual

report, page 9, which only says, under the heading "TRADEMARKS AND PATENTS"

**"TRADEMARKS AND PATENTS**

Coach owns all of the material trademark rights used in connection with the production, marketing and distribution of all of its products, both in the U.S. and in other countries in which the products are principally sold Coach also owns and maintains worldwide registrations for trademarks in all relevant classes of products in each of the countries in which Coach products are sold. Major trademarks include *Coach, Coach and lozenge design, Coach and tag design, Signature C design, Coach Op Art design and The Heritage Logo (Coach Leatherware Est. 1941).* Coach is not dependent on any one particular trademark or design patent although Coach believes that the Coach name is important for its business. In addition, several of Coach's products are covered by design patents or patent applications. Coach aggressively polices its trademarks and trade dress, and pursues infringers both domestically and internationally. It also pursues counterfeiters domestically and internationally through leads generated internally, as well as through its network of investigators, the Coach hotline and business partners around the world.

Coach expects that its material trademarks will remain in existence for as long as Coach continues to use and renew them. Coach has no material patents."

There is clearly no way a member of the public, and this Defendant in particular, can

ascertain the mark we are here concerned with and identify it as a registered Coach mark from

the foregoing.  It does not display the trademark with any one of the statutory prerequisites

showing registration. From what is said, no one can know what a "signature C design" trademark

actually looks like.

Mr. Blakely, in argument of Defendant's motion during trial, said that on the last page of

a catalog it showed the registration, but the evidence clearly shows it was not with the logo and

Mr. Blakely maintained it did not need to,  saying "Congress did not require that"  in §1111. (Tr-

189)

The documentary evidence submitted by Coach clearly shows that the notices of

registration in the Coach filings was not "with" the trademark, and thus could not be the basis for

a jury verdict for Coach as a matter of law.

In *International Stamp Art, Inc. v. U.S. Postal Service*, supra, the district court considered a motion for summary judgment on the basis that the plaintiff had not displayed the registration symbol with its registered perforation design mark but denied summary judgment because there was an issue of fact as to whether actual notice was given. If Coach's position had been the law there would have been no reason for the court to even consider actual notice.

More recently, the Central District of California addressed the issue of actual notice in context of a summary judgment motion in *Coach, Inc. v. Asia Pacific Trading Co.*, 676 F. supp. 2d 914 (Dist. Court, CD California, 2009) The trademark registration was for a decorative design consisting of a pattern of the letters "CC" (the "CC Design"), but no form of statutory notice had been displayed with this registered mark. There was no evidence that the defendant had any specific knowledge of the plaintiff's "CC Design" registration prior to the filing of the lawsuit, but the defendant's sales manager acknowledged in a deposition that she was "familiar with [plaintiff's] products and what they look like." Coach argued that this raised a genuine issue of fact as to whether the defendant had actual notice of the plaintiff's trademark registration prior to service of the complaint. The district court stated that "while this evidence might support a conclusion that [defendant] had some familiarity with the appearance of [plaintiff's] products prior to service of the complaint, it does not remotely indicate . . . prior notice of [plaintiff's] registrations, which is what § 1111 [Lanham Act § 29] requires." The court concluded that the plaintiff failed to raise a genuine issue of material fact regarding actual notice of the registration covering the plaintiff's design mark and held that damages under the Lanham Act were not available.

The jury did not have any evidence before them to support their finding of notice and were not instructed that was necessary. Mr. Stringer testified that he had no knowledge of the

alleged mark, just a general knowledge of Coach as a corporate giant in its industry. Mr. Lau

testified, erroneously, that the mark was shown as registered in the catalogs of Plaintiffs sent the

millions of customers, in the annual reports of Coach, and in the 10-Ks filed by Coach. The jury

in the voir dire stage said they did not know of the mark, so how could they have learned of the

mark except by believing what they were told, that the 10-Ks, catalogs, and annual report

showed the trademarks <u>with</u> the registration notice, which is simply not true.

      The evidence is undisputed that Defendant made no sales after being notified of Coach's

claim and in fact took back and destroyed all the key chains remaining either unsold or still in

Hillman's possession.

      *In this case there is simply no evidence upon which a jury could have determined that*

*Siskiyou had actual or statutory notice as it said in its verdict. The facts here are precisely as*

*they were in the Asia Pacific case.*

      As a matter of law, Plaintiffs are not entitled to damages for trademark infringement of

any kind prior to actual notice under the second claim for relief, Trademark Infringement under

15 U.S.C.§ 1114. There admitted was no such actual notice before any sales of the key chains in

question.

## 4. <u>Defendant's profits may be used for determining an award under 15 U.S.C §1117(a) only when the trademark infringement was willful.</u>

      A defendant's profits can only be disgorged to prevent unjust enrichment if the

trademark infringement was willful. *Adray v. Adry-Mart, Inc.* 76 F. 3d 984, 988 (9th Cir. 1995).

In this case court has already ruled that the infringement was not willful. There clearly was no

"clear and convincing" evidence of willfulness as required in trademark infringement cases.

*CollegeNET, Inc. v. XAP Corp.*, 483 F. Supp. 2d 1058,1065 (D.Or.2007)  Since Coach did not

claim any actual damages, and surely did not produce any evidence of actual damages, Defendant's profits, if any, cannot be used in determining a proper award as a matter of law and thus the verdict cannot be upheld in this instance.

Judgment as a matter of law for Siskiyou is warranted "if there is no legally sufficient basis for a reasonable jury to find in favor of [Coach*), " meaning no substantial evidence. Bell v. Clackamus County,* 341 F. 3d 858, 865, (9th Cir. 2003) Because the jury's damages verdict in this case is not supported by substantial evidence, Siskiyou's motion for judgment as a matter of law should be granted.  See *Murray v. Laborer Union, Local No. 324*, 55 F. 3d `490, 1495 (9th Cir. 1994)

### 5.  <u>Plaintiffs' evidence did not provide substantial evidence of confusion so as to allow a reasonable jury to find for them.</u>

It is incumbent upon Plaintiffs to prove by a preponderance of the evidence that there is at least some likelihood of confusion. (See 9th Circuit Model Instruction # 15.5) That evidence as indicated by the cases cited by Judge King in the A*didas* case must arise to the level of "substantial evidence."  Here it did not.

Plaintiffs have conceded there is no likelihood of confusion with respect to point of sale, (see Coach filing, document 53, page 2) which left their burden the proving pre-sale or post-sale confusion with "substantial evidence".  Plaintiffs did not offer *any* evidence of either.

*Unless this court is willing to say that all a Plaintiff has to do is offer the trademark and the claimed offending product, and from there a jury without more can determine confusion, this verdict cannot be upheld.*

Plaintiff offered no evidence except the strength of Coach. There was no evidence of the strength of <u>the mark</u>. The strength of the Mark is what is important, not the strength of Coach as

a company or brand, and the evidence can be perused in vain to find any evidence of the strength of the mark. The trademark here was not the least bit like the Swoosh for Nike other marks known by all.  No member of the jury said they even knew of the mark in voir dire.

Coach is asking the court to simply say that all they have to do is show the product and the trademark without more and the Sleekcraft case possibilities of confusion can be determined by the jury. Defendant suggests that is not the law.

Post-Sale Confusion Requires Proof of an Effect on Consumer Purchasing decisions.  See instruction number 24 in the A*didas* case which again was a case where there was no issue of point of sale confusion, only pre and post sale confusion.  It read as follows:

> Post-sale confusion can occur when someone other than the purchaser sees the item after it has been purchased ***and the confusion influences a later purchasing decision.***

The purchasing decision requirement is rooted in the fundamental purposes of the Lanham Act: "the Lanham Act is concerned with 'customer confusion when choosing to purchase, or not purchase, the items, not public confusion at viewing them from afar.'" *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 382 (7th Cir.1996) (quoting *Nike, Inc. v. JustDid It Enters.*, 6 F.3d 1225, 1229 (7th Cir. 1993)). Requiring the additional steps of showing that the consumers will perceive something about the product, and that what they observe will affect a later purchasing decision' ensures that a plaintiffs post sale claim only becomes actionable if it comports with the goals and policies underlying the Lanham Act. See *Reebok Intl. Ltd. v. K-Mart Corp.*, 849 F. Supp. 252,272-73 (S.D.N.Y. 1994), vacated pursuant to consent judgment, 1994 WL 733616 (S.D.N.Y.).

As Judge Aiken said in *Edge Wireless, LLC, v U.S.Cellular, 03-1362-AA,* a finding of a likelihood of confusion requires such confusion be probable and "not simply a possibility" (Opinion page 7)

This distinction is especially important in the post-sale context. *See, e.g., Sportvision, Inc. v. Sportsmedia Technology Corp.,* 2005 WL 1869350, at *10 (N.D. Cal.) (holding that a "bare allegation" concerning what might occur in the post-sale context is insufficient to support a post-sale claim); *see also Libman Co. v. Vining Industries, Inc.,* 69 F.3d1360,1364 (7th Cir. 1995) (reversing a finding of infringement and explaining that the plaintiffs "narrative of possible confusion cannot be regarded as better than a hypothesis, and a hypothesis that has not been tested." This distinction is especially important in the post-sale context.

Coach specifically denied making a product similar to the key chains, and making them of similar material or selling them in Wal-Mart, Lowes or similar stores.   As mentioned, Coach did not even try to provide evidence of the strength of the trademark, just the strength of Coach as a company. It failed to offer any evidence at all that any post-sale confusion existed or had any effect on consumer purchasing decisions. It made no attempts to survey customers regarding confusion.( Tr-125-127 ) It had no complaints from customers or buyers of the key chains in question saying they had been misled or were confused. (Tr-134) In argument Mr. Blakely said it would cost $50-100,000 to do survey and it was not necessary. (Tr- 292)

In fact Coach acknowledged that it had no evidence of any actual post sale confusion. Coach further offered evidence as discussed above that it was thriving as a business and had not lost even any brand credibility. Absent any evidence of lost sales or consumers precludes any suggestion that the jury could have been justified in inferring that the alleged post-sale confusion

affected consumer purchasing decisions. *Pioneer Leimel Fabrics, Inc. v. Paul Rothman Industries*, 25 U.S.P.Q.2d 1096, 1107 (E.D. Pa.1992) ("a verdict may not be based on an expert's false assumptions or theoretical speculations"). If a verdict could not have been based upon an expert's testimony regarding theoretical speculations, it follows that the jury verdict cannot be based upon no evidence and just the jury's speculations. The law required Coach to do more than simply ask the jury to posit, without proof, that consumers **might** be confused and **might** alter their purchasing decisions based upon such potential confusion. Siskiyou is entitled to judgment as a matter of law or, at minimum, a new trial on this issue.

Post sale confusion is wholly speculative and totally subjective in most instances. It deals with the possible confusion of unknown persons with unknown exposure to the product and unknown knowledge of the registered trademark. It is normally proved by some expert testifying about likelihood of confusion surveys etc. In the *Adidas* case Judge King did let the issue of post sale confusion go to the jury after testimony of a number of experts with respect thereto, but in this case Coach had no such expert here and simply urges that the jury, without evidence, can speculate and reach a verdict.

As Judge Aiken said in her opinion cited above, the evidence of confusion requires a "probable" confusion, and not simply as "possibility" of confusion. Here there was no evidence at all of even any possibility of confusion except as such could be conjured up in the imagination of a jury based upon comparing the key chain with the trademark. Without any evidence at all how could a jury determine that confusion was "probable"?

**Initial Interest Confusion Requires Proof of a Marketplace Effect.**

Actionable initial interest confusion requires not simply likely confusion in the abstract, but likely confusion on which a defendant capitalizes for the specific purpose of capturing initial consumer attention. (See jury instruction #24 in A*didas* case)

Courts have given meaning to this requirement. The Third Circuit explained in the initial interest context, for example, that "[w]here confusion has little or no meaningful effect in the marketplace, it is of little consequence in our analysis." *Checkpoint Sys., Inc. v. Checkpoint Software Techs., Inc.*, 269 F.3d 270,297 (3d Cir. 2001).

Coach offered no evidence that the alleged confusion had a likely effect on consumers. At trial, Coach did not offer any evidence that Siskiyou lured or attempted to lure potential consumers by passing off its key chains as those of Coach. Nor did Coach present credible evidence that it was even remotely likely that consumers would be lured to Wal-Mart or Lowes as a result of a belief that the alleged key chains were Coach key chains that could be purchased in those stores. Coach's dropping of any claim of point of sale confusion is tantamount to admitting there was no pre-sale confusion as well. It is the point of sale merchandising that creates any possibility for pre-sale confusion. Coach realized that the merchandising evidence conclusively indicated there was no point of sale confusion since the key chains clearly were displayed as a non-Coach brand and with a statement thereon that they were distributed by Hillman and made in China. (Tr-119) There was simply nothing where the key chains were sold that would draw customer's attention to make them believe they were purchasing a Coach product, i.e. no pre-sale confusion.

As with Coach's proof on the issue of post-sale confusion, there is no legally sufficient evidentiary basis for a reasonable jury to have found that the initial interest confusion alleged by

Coach in this case had any effect on consumers.  Coach's claims in this context are analogous to

claims rejected in *Libman and Dorr-Oliver*. In *Dorr-Oliver*, for example, the court rejected the

plaintiffs initial interest confusion theory for a lack of evidence concerning the very same

elements Coach failed to establish here. *Dorr-Oliver* v. *Fluid-Quip, Inc.*, 94 F.3d 386 at 383-84

(7th Circuit 1996); see *Libman* 69 F.3d at 1363;  ("[A]

finding of likely confusion can no more be based on pure conjecture or a fetching narrative alone

than any other finding on an issue on which the proponent bears the burden of proof").

6.  **The Court May Set Aside or Reduce the Jury's Damages Award Because it is Erroneous and Contrary to the Clear Weight of the Evidence**

The second claim for relief, under which the jury awarded $75,000 damages, is a claim for

unfair competition under 15 U.S.C. 1114. Damages under that statute are set forth in 15 U.S.C.

§1117 which provides: (insofar as applicable here)

> **a) Profits; damages and costs; attorney fees**
> When a violation of any right of the registrant of a mark registered in the
> Patent and Trademark Office, a violation under section 1125(a) or (d) of this title,
> or a willful violation under section 1125(c) of this title, shall have been
> established in any civil action arising under this chapter, the plaintiff shall be
> entitled, subject to the provisions of sections 1111 and 1114 of this title, and
> *subject to the principles of equity,* to recover
> > **(1)** defendant's profits,
> > **(2)** any damages sustained by the plaintiff, and
> > **(3)** the costs of the action. The court shall assess such profits and damages or
> cause the same to be assessed under its direction. In assessing profits the plaintiff
> shall be required to prove defendant's sales only; defendant must prove all
> elements of cost or deduction claimed. In assessing damages the court may enter
> judgment, according to the circumstances of the case, for any sum above the
> amount found as actual damages, not exceeding three times such amount. If the
> court shall find that the amount of the recovery based on profits is either
> inadequate or *excessive* the court may *in its discretion enter judgment for such
> sum as the court shall find to be just, according to the circumstances of the case.
> Such sum in either of the above circumstances shall constitute compensation and
> not a penalty*. The court in exceptional cases may award reasonable attorney fees
> to the prevailing party. (emphasis supplied in italics by Defendant)



It is apparent from a reading of the above statute that the final determination of the damages to be awarded is a matter within the sound discretion of the trial court. The verdict of the jury can be considered by the trial court in reaching that decision. As mentioned earlier, a plaintiff's profits cannot be considered unless the infringement was willful, admittedly not the case here.

Even where a verdict is supported by substantial evidence, the Court may grant a new trial where the verdict is "contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Shimko v. Guenther*, 505 F. 3d 987, 993 (9th Cir. 2007). In making this determination, the court may weigh the evidence and evaluate the credibility of the witnesses. *See U.S. v. Kellington*, 217 F. 3d 1084, 1095 (9th Cir. 2000).

Damages under the Lanham Act may not be based upon conjecture, speculation or guesswork. See, e.g., *M2 Software, Inc v. Viacom*, Inc., 223 Fed. Appx. 653,655 (9th Cir. 2007: *Lindy Pen,* 982 F. 2d at 1407.

In this case Plaintiffs did not even try to prove damages to Plaintiffs and offered no evidence in documentary form, or by testimony, with respect to their damages except to say, through Mr. Lau, that the cost of a Coach key chain, of admittedly different qualify, was some $6 and the average sale price was $35. That testimony is meaningless absent some testimony about how many key chain sales were lost by Coach because of the claimed post-sale confusion or the overhead and other sales costs which would be attributable to such sales.

The only evidence upon which the jury could determine damages would have to be "the defendant's profits". Counsel for Coach, in argument at least twice stated those profits to be approximately $37,000. (Tr-246 & 258.) It is undisputed but that the original sales were 85,845 and that 50,670 were returned and destroyed, leaving at most 35,175 which were unaccounted

for, and possibly sold into Coach's market. The evidence is further undisputed that the purchase price of the key chains by Defendant was 32 cents and the sale price to Hillman was 75 cents so that the maximum profit, even without considering overhead was 45 cents per item, or $15,828.75.

The Court indicated that the number of key chains were to be determined at the time of the infringement. However, Coach callously decided not to notify Siskiyou that it believed there was an infringement when it learned of the alleged infringement in November, 2009 (Tr-129) Instead Coach waited to extract a settlement first from Hillman in June, 2010 and then later to pursue Siskiyou. During that legal action with Hillman, Siskiyou agreed to take back the key chains that Hillman requested. Siskiyou did not believe there was an infringement but agreed to do so as a business decision to protect its relationship with its largest customer. Taking returns from a major customer is a normal business activity. At the time of the returns Siskiyou had not been alleged as having done anything wrong, i.e. not infringement in spite of Coach's knowledge of Siskiyou's sales to Hillman. By the time this case was filed Coach knew that only 35,175 key chains had been marketed or capable of being marketed and only that amount used in the calculation of profits. There were no additional chains available for sale at the time the complaint herein was filed making the actual profit before overhead of Siskiyou at most $15,828.75

Even if the jury were allowed to determine profits based upon the whole of the 85,845 original sales, without deduction for the sales we know were not made to the public, the damages the jury could allow would be 45 cents times that amount, or a total of $38,630.25 again without any allowance for overhead. As mentioned earlier, Mr. Blakely argued that figure as $37,000 twice in his argument.

It is apparent that the jury was mislead by a damage instruction given them, Instruction # 13, which allows for computation of Plaintiffs damages based upon factors for which there was no evidence at all. The jury had to have used instruction number 13 in order to come to some even damage amount, because no basis for using the damages under 15 U.S.C. 1117(a) could come up with an even amount given the evidence offered and received.

There was no evidence in the record at all from which the jury could consider "the injury to the Plaintiff's reputation; the injury to Plaintiff's good will, including injury to Plaintiff's general business reputation; the expenses of preventing customers from being deceived; and the cost of future corrective advertising reasonably required to correct any public confusion by the infringement." Any determination by a jury with respect to those measures of damages would be wholly speculative. Just as an example, how could a jury determine the costs of corrective advertising without some evidence of how much advertising would be needed, the costs of such advertising etc.?

The fact that plaintiffs did not even contend that it was damaged at all is best shown by their election to take statutory damages in the event of a counterfeit verdict. They made that election because they had no actual damages.

In fact their evidence was totally to the contrary. Their annual reports, their 10-Ks showed nothing but success and increasing sales and earnings, with no mention in the 10-Ks or annual reports of any problems with Siskiyou, or any other company, which would have any material effect on their financial condition. What Coach actually said in Exhibit 6, page 14 under the heading of "Legal Proceedings" and other annual reports was the following:

> "Coach believes that the outcome of all pending legal proceedings in the
>
> aggregate will not have a material adverse effect on Coach's business or consolidated

*financial statements" (the same statement is made in the other exhibits offered by Coach having to do with financial considerations. "*

In this case there is simply NO evidence to support the jury verdict of $75,000 much less any "substantial evidence". Since damages under the Lanham Act may not be based upon conjecture, speculation or guesswork the jury's verdict may not stand. *M2 Software, Inc v. Viacom,* Inc., 223 Fed. Appx. 653,655 (9th Cir. 2007: *Lindy Pen,* 982 F. 2d at 1407.

Tort law principles govern remedies in trademark infringement actions; consequently, like tort cases, damages "must be established with reasonable certainty." See *Lindy Pen Co., Inc.v. Bic Pen Corp.,* 982 F.2d 1400,1407 (9th Cir. 1993). In trademark cases there is "a clear distinction between the showing required to establish a right to injunctive relief and that required to establish a right to damages." *Aktiebolaget Electrolux v. Armatron Intern., Inc.,* 999 F.2d at 5 (1st Cir. 1993); see *EckelIndus., Inc. v. Primary Bank,* 26 F. Supp. 2d 313, 317 (D.N.H. 1998) ("To show actual harm, plaintiff must show both that the defendant's deceptive act created confusion and that the plaintiffs injury was caused by consumer reliance on the misleading act.") (quoting *Camel Hair and Cashmere Inst. v. Associated Dry Goods Corp.,* 779 F.2d 6, 12 (1st Cir 1986)).

The Ninth Circuit recognizes the distinction between the proof necessary to establish liability and the proof necessary to establish a right to damages. *Lindy Pen Co.,* 982 F. 2d at 1410. To obtain monetary relief in a trademark action, "a plaintiff must prove both the fact and the amount of damage." Id The fact of actual damage to plaintiff must first be proven by the preponderance of the evidence; then, the amount of damages must be proven to a "reasonable certainty." *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197,210 (9th Cir. 1989). The fact of damage may not be proven by mere reference to an amount of damages claimed.

*Trovan, Ltd. v. Pfizer*, Inc., Case No. CV-98-00094 LGB MCX, 2000 WL 709149, *8 (CD. Cal. May 24, 2000).

Coach has not come close to meeting the reasonable certainty threshold for establishing any economic injury caused by Siskiyou's infringement. At trial, Coach offered nothing other than the statement of the sales price of an "average" key chain and the cost thereof. There was no evidence of any costs Coach had attempting to correct any confusion by consumers. Accordingly, even had the alleged infringement been willful, the Court should grant Siskiyou relief because the jury verdict was not based upon any reasonable evidence of Coach's damages. See, e.g., *Invicta Plastics (USA) Ltd v. Mego Corp.*, 523 F. Supp. 619, 624 (S.D.N.Y. 1981) ("[D]amages will not be awarded in the absence of credible evidence demonstrating injury to plaintiff resulting from defendant's sales."); see also *McClaran v. Plastic Industries, Inc.*, 97 F.3d 361 (9th Cir. 1996).

By limiting its claims to confusion occurring in the initial-interest and post-sale context, Coach has increased its burden to demonstrate that it suffered any actual damage. A review of reported case law indicated few, if any, instances where a plaintiff proved a compensable harm or that the defendant acted with willfulness in either the initial interest or post sale context. The reason is obvious. 'The Lanham Act is concerned with customer confusion when choosing to purchase, or not purchase, the items, not public confusion at viewing them from afar." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.,* 94 F.3d 376, 382 (7th Cir. 1996); see also *Libman Co. v. Vining Industries,* Inc., 69 F.3d 1360, 1364 (7th Cir. 1995) ("Either consumers are confused at the point of sale, or they become confused later and this carries over to the next time they are in the market for the product."). This is why courts require the additional element of proof of impact upon a purchasing decision before liability may be found in any initial-interest or

post-sale confusion case. *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005) ("[Trademark infringement protects only against mistaken purchasing decisions and not against confusion generally.") (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 582-83 (2d Cir.1991) (internal quotation marks and citation omitted) (emphasis added*)); Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 552-53 (6th Cir. 2005) (recognizing that consumers may be more likely to purchase the branded product if the infringing product is seen in the post-sale context).

Coach has not claimed damages in the form of lost sales, and did not introduce evidence that it had suffered even a single lost sale as a result of the existence of the alleged infringing key chains.

However, even if there is evidence to support the jury verdict, the court still is required to utilize its discretion using equitable principles in determining damages under Section 1117(a) set forth above as follows:

> "*If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.*"

Defendant would suggest that the court is entitled to take into consideration the equitable factors hereinafter mentioned with respect to the new trial motion, or remittitur.

## MEMORANDUM WITH RESPECT TO ALTERNATIVE MOTION FOR NEW TRIAL PURSUANT TO FRCP 59

### Legal Standard

Again the following legal standard is quoted from the opinion of Judge King in the Adidas case previously cited.

New Trial

Even if the verdict is supported by substantial evidence, the court may grant a motion for a new trial under Federal Rule of Civil Procedure 59 "if the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, or to prevent a miscarriage of justice." Silver Sage Partners v. City of Desert Hot Springs. 251 F.3d 814, 819 (9th Cir. 2001); see also Molski v. M.J. Cable. Inc.. 481 F.3d 724, 729 (9th Cir. 2007) ("Historically recognized grounds [for a new trial under Rule 59] include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the moving party.") (internal quotation and citation omitted). A new trial is warranted on the basis of an incorrect evidentiary ruling only "if the ruling substantially prejudiced a party." United States v. 99.66 Acres of Land 970 F.2d 651, 658 (9th Cir. 1992).

When a motion for new trial is based on insufficiency of evidence, a "stringent standard applies" and a new trial may be granted "only if the verdict is against the great weight of evidence or it is quite clear that the jury has reached a seriously erroneous result." Digidvne Corp. v. Data Gen. Corp.. 734 F.2d 1336,1347 (9th Cir. 1984) (internal quotation and citation omitted), cert, denied. 473 U.S. 908 (1985). The "district court may not grant a new trial simply because it would have arrived at a different verdict." Silver Sage Partners. 251 F.3d at 819. Rather, the "trial court must have a firm conviction that the jury has made a mistake." Landes Constr. Co.. Inc. v. Royal Bank of Canada. 833 F.2d 1365, 1372 (9th Cir. 1987). When evaluating a motion for new trial under Rule 59, the court may weigh the evidence,

evaluate the credibility of the witnesses, and is not required to view the evidence from the perspective most favorable to the prevailing party. United States v. Kellington. 217 F.3d 1084, 1095 (9th Cir. 2000). HI.

Remittitur

Remittitur is available to correct excessive verdicts. Pershing Park Villas v. United Pacific Ins.. 219 F.3d 895,905 (9th Cir. 2000). Generally, a court "must uphold the jury's finding of the amount of damages unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or only based on speculation or guesswork." Los Angeles Mem'l Coliseum Comm'n v. NFL. 791 F.2d 1356, 1360 (9th Cir. 1986), cert, denied. 484 U.S. 826 (1987). A trial court reviewing a damages award attacked as excessive must consider the evidence of damages in a light most favorable to the prevailing party. Seymour v. Summa Vista Cinema. Inc.. 809 F.2d 1385, 1387 (9th Cir.), opinion amended on other grounds. 817 F.2d 609 (9th Cir. 1987). If the court concludes that a damages award is excessive, it may either grant the defendant's motion for a new trial, or deny the motion, conditioned upon the prevailing party's acceptance of a remittitur. Silver Sage Partners. 251 F.3d at 818. A trial court granting a motion for remittitur does not substitute its judgment for that of the jury, but instead reduces the judgment to the maximum amount sustainable by the proof. D & A Redi-Mix v. Sierra Redi-Mix & Contracting Co.. 692 F.2d 1245, 1249 (9th Cir. 1982).

## ARGUMENT

Defendant has already discussed the reasons why the verdict is contrary to the clear weight of the evidence, is based on evidence which is false, (being the testimony of Mr. Lau as to what the annual reports and other evidence said), and why discarding the verdict is necessary to prevent a miscarriage of justice. Those arguments will not be repeated.

1. **The jury award was based only on speculation or guesswork and not supported by the evidence.**

When a verdict is clearly not supported by the evidence, or only based on speculation or guesswork it should be overturned. *Los Angeles Mem'l Coliseum Comm'n v. NFL.* 791 F.2d 1356, 1360 (9th Cir. 1986), cert. denied. 484 U.S. 826 (1987). In this case, as discussed earlier the jury verdict was not supported by the evidence and had to have been based on speculation or guesswork, as mentioned in the Go case discussed hereinafter, a verdict "pulled out of the air."

2. **Under 15 U.S.C. § 117(a) the Court must determine the final award, not the jury**.

At the very least, the court must review the verdict given the equitable considerations which the jury did not have in determining damages under 15 U.S.C. 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty."

Coach has submitted no evidence of its actual damages. Thus $75,000 would be a total windfall to Plaintiffs contrary to the principles set forth in the Lanham Act. Further, the clear evidence is that even if Defendant technically infringed, it was an innocent action which supports a denial of monetary relief as an equitable matter as hereinbefore discussed.

In this case the damage amount the jury determined is not based on any evidence put forth at trial, and the method of its determination cannot be determined. It was clearly a figure pulled out of the jury's imagination with no suggestion from Plaintiff it was in fact damaged.

3. **Based upon equitable principles the award must be either nothing, or at least reduced.**

Even if the jury's determination could be upheld under the evidence the jury had before

it, the court still must use its equitable powers to determine what is "just according to the

circumstances of the case." See for example, *Go Medical Industries  PTY, LTD. and Alexander*

*G.B. O'Neil v. Inmed Corporation, and Alpine Medical, Inc,* 471 F. 3d 1264, (Fed Cir, 2006)

In that case the appeals court said the following:

15 U.S.C. § 1117 (emphasis added).

> First, we agree with the district court that § 1117 does not allow for a downward adjustment of actual damages. The jury's award of a reasonable royalty, however, was not based on substantial evidence of actual damages. There was no evidence of an explicit agreement setting forth a royalty rate for use of the "O'Neil" name on catheters. Rather than analyze how much MMG would have agreed to pay as a trademark royalty in a hypothetical negotiation, Go's expert merely considered MMG's excess earnings and attributed 3% to the trademark and the remaining 20% to other factors. This was correctly characterized as a recovery based on MMG's profits, rather than actual damages in the amount of lost royalties. As such, the district court had discretion under § 1117 to adjust this portion of the jury's award.

> Go's expert provided no explanation for how he assigned the 3% figure as a reasonable royalty for use of the trademark; in fact, the district court thought it seemed to be "arbitrarily pulled out of the air." First JMOL Order, slip op. at 16. The court also pointed to the abundance of evidence in the record that the success of MMG's catheters was more likely due to its marketing and advertising efforts, the superiority of the product, its eligibility for Medicare reimbursement, and other factors, not to the "O'Neil" name. *Id.* We find no abuse of discretion in the court's reduction of this award.

> As to the jury's award of profits, § 1117 gives district courts broad latitude to adjust this amount.[4] The district court pointed to numerous equitable considerations (which we do not repeat here) weighing against an award of profits. *Id.,* slip op. 17-23. Likewise, the district court gave sufficient reasons why the jury's punitive damages award was properly set aside. *Id.,* slip op at 25-43. In short, we find no abuse of discretion here.

In this case the same basic principles apply. The jury verdict amount was "arbitrarily pulled out of air". Plaintiffs admit they had no "actual damages" and offered no proof of any. In the 9th Circuit, as set forth in the *Adray* case and the *CollegeNET* case, supra, an award cannot be based upon a defendant's profits unless the infringement was willful. But even if that were not the law in the 9th Circuit, when the award is based upon defendant's profits the court has the authority to reduce the award. *Go,* supra.

### 4. Defendant has not yet had the opportunity to present evidence concerning the equitable matters the court should consider in arriving at an award.

In this case Defendant has not yet had the opportunity to present evidence going to the equities of the situation except in connection with its motions for summary judgment. The court would not allow any testimony on any equitable matters in the jury portion of the trial, and, having determined there was a genuine issue of fact, should now allow testimony on all the equitable issues pleaded, as well as the equitable matters which Defendant contends should be considered by the Court pursuant to 15 U.S.C. § 1117(a). As the court knows (and the jury did not know) Siskiyou has already paid over $150,000 toward a settlement of the same case believing it was included within the settlement and released from any liability. Further, the actual gross profit of Siskiyou was only $15,828.75 before overhead, which Mr. Stringer said was 25%. The actual fact, which is undisputed, is that Siskiyou actually had a loss, not a profit from the whole transaction. What is "just" under the circumstances is nothing, but certainly not more than $15,828.75. If nothing else, the court should determine an appropriate remittitur amount would be at most the gross profit on the sale of the amount actually sold, rather than the amount originally delivered to Hillman. The court should also keep in mind that the amount awarded, in the words of the statute, has to be for "compensation" and not a "penalty".

## 5.  **Trademark Bullying**

Finally, as was maintained in earlier motions, there are many elements of trademark "bullying" involved with this case.  Coach's attorney said he didn't know about Siskiyou until after the settlement with Hillman, and filed a declaration to that effect.  However, at trial Mr. Lau admitted they knew about Siskiyou in November 2009, (Tr-189) even though Mr. Blakely filed a declaration that Coach did not know about Siskiyou until after the settlement with Hillman, and filed a response to Defendant's motion for summary judgment on the res judicata defense saying Coach could not have joined Siskiyou in the California case because it did not even know of the existence of Siskiyou. The settlement with Hillman should have included Siskiyou, the elements of claim preclusion (res judicata) are all present based upon the testimony of Coach's own witness at trial, and the filing of the case originally in New York indicates trade bullying at its worst. The court is invited to read the "Trademark Litigation Study" discussing trade bullying at:

http://www.trademarkandcopyrightlawblog.com/uploads/file/TrademarkLitigationStudy[1](1)(1).pdf

One of the "Suggestions for the Courts" contained therein is to the affect that "curbing abusive trademark litigation practices should be left to the judiciary on a case-by-case basis" (p. 21).  Defendant suggests this would be an appropriate time to use that power by awarding attorneys fees to Defendant.

Respectfully submitted this 28th day of August, 2012

.

DONALD A. BICK, P.C

Donald A. Bick OSB# 60011
Attorney for Defendants